# MONTGOMERY v. PORTLAND.

ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

No. 47.   Argued April 9, 1903.—Decided May 18, 1903.

While section 12 of the act of Congress of September 19, 1890, forbade the
construction or extension of piers, wharves, bulkheads, or other works,
beyond the harbor lines established under the direction of the Secretary
of War, in navigable waters of the United States, "except under such
regulations as may be prescribed from time to time by him" it does not
follow that Congress intended in such matters to disregard altogether the
wishes of the local authorities.   Under existing enactments the right of
private persons to erect structures in a navigable water of the United
States that is entirely within the limits of a State is not complete and
absolute without the concurrent or joint assent of both the Federal
government and the state government.  *Cummings* v. *City of Chicago*, 188
U. S. 410, and *Willamette Bridge Co.* v. *Hatch*, 125 U. S. 1, followed.

THIS writ of error brings up for review the final decree in a
suit instituted in one of the courts of Oregon by the City of
Portland and Port of Portland against James B. Montgomery,
who died during the progress of the cause, and was succeeded
as defendant by his executrix, the present plaintiff in error.

The principal question in the case is whether, under the cir-
cumstances to be presently stated, Montgomery, as owner of
land situated within the limits of Portland on the Willamette
River, had the right to extend his wharves into the river be-
yond certain harbor lines established in 1892.

The City of Portland was authorized by its charter to regu-
late the building of wharves within its limits and to establish a
line beyond which wharves should not be built nor piles driven.
That provision was in force on and after February 19, 1891.

By an act of the Oregon Legislature of February 18, 1891,
the inhabitants of the Port of Portland were created a corpora-
tion " to so improve the Willamette River at the cities of Port-
land, East Portland and Albina, and the Willamette and Co-
lumbia Rivers between said cities and the sea, as that there shall
be made and permanently maintained in said Willamette River

at said cities and in the said Willamette and Columbia Rivers between said cities and the sea a ship channel of good and sufficient width and having a depth at all points at mean low water both at said cities and between said cities and the sea, of not less than twenty-five feet." And so far as was necessary to carry out that object, the corporation was given full control of those rivers at those cities and between them and the sea, to the full extent that the State could grant the same, and was authorized to remove such obstructions from them and erect such works in them as were found necessary or convenient in creating and maintaining the required channel. The power so conferred was to be exercised by a Board of Commissioners. Such a Board had been appointed and organized prior to the institution of this suit.

A copy of the act incorporating the Port of Portland was sent to the Secretary of War, "who approved the same," and the work done by that Port in improving the Willamette and Columbia Rivers was conducted in conjunction with the United States engineers in charge of those rivers, and who acted under instructions from the Secretary of War. The engineers annually reported to the Secretary the nature and amount of such work.

By the River and Harbor Act of July 13, 1892, amending the seventh section of the River and Harbor Act of September 19, 1890, it was provided:

"§ 7. That it shall not be lawful to build any wharf, pier, dolphin, boom, dam, weir, breakwater, bulkhead, jetty or structure of any kind outside established harbor lines, or in any navigable waters of the United States where no harbor lines are or may be established, without the permission of the Secretary of War, in any port, roadstead, haven, harbor, navigable river, or other waters of the United States, in such manner as shall obstruct or impair navigation, commerce, or anchorage of said waters; and it shall not be lawful hereafter to commence the construction of any bridge, bridge draw, bridge piers and abutments, causeway, or other works over or in any port, road, roadstead, haven, harbor, navigable river or navigable waters of the United States, under any act of the legislative assembly

of any State, until the location and plan of such bridge or other works have been submitted to and approved by the Secretary of War, or to excavate or fill, or in any manner to alter or modify the course, location, condition or capacity of any port, roadstead, haven, harbor, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless approved and authorized by the Secretary of War: *Provided*, That this section shall not apply to any bridge, bridge draw, bridge piers and abutments the construction of which has been heretofore duly authorized by law, or be so construed as to authorize the construction of any bridge, draw bridge, bridge piers and abutments or other works under an act of the legislature of any State, over or in any stream, port, roadstead, haven or harbor or other navigable water not wholly within the limits of such State." 26 Stat. 454; 27 Stat. 88, 110.

"§ 12. That section 12 [1] of the River and Harbor Act of August eleventh, eighteen hundred and eighty-eight, be amended and reënacted so as to read as follows:

" Where it is made manifest to the Secretary of War that the establishment of harbor-lines is essential to the preservation and protection of harbors, he may, and is hereby authorized, to cause such lines to be established, beyond which no piers, wharves, bulk-heads or other works shall be extended or deposits made, except under such regulations as may be prescribed from time to time by him; and any person who shall wilfully violate the provisions of this section, or any rule or regulation made by the Secretary of War in pursuance of this section, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding one thousand dollars, or imprisonment not exceeding one year, at the discretion of the court for each offence." 26 Stat. 426, 455.

---

[1] SEC. 12. Where it is made manifest to the Secretary of War that the establishment of harbor lines is essential to the preservation and protection of harbors, he may, and is hereby, authorized to cause such lines to be established, beyond which no piers or wharves shall be extended or deposits made except under such regulations as may be prescribed from time to time by him." 25 Stat. 400, 425, c. 860.

On the 9th day of August, 1892, the Secretary of War, proceeding—so the finding of facts states—under section twelve of the act of 1890, caused certain harbor lines to be established in the Willamette River within the limits of Portland. And by an ordinance adopted December 12, 1892, the Common Council of the city adopted as its wharf lines the harbor lines so established.

On or about May 21, 1898, Montgomery applied to the Secretary of War to have the above harbor lines relocated or located farther out in front of certain water lots belonging to him, his complaint being that, as established in 1892, those lines were too far inland. By order of the Secretary a public hearing was had on this application. A number of the leading business men of Portland attended and made protests against the proposed relocation. An account of this meeting, with all the papers relating to it, was sent to the Chief of Engineers, who made a report to the Secretary of War favorable to Montgomery's application. A map accompanied that report, showing the proposed new line. Under date of September 23, 1898, Mr. Meiklejohn, Acting Secretary of War, approved Montgomery's application and assented to the proposed change or relocation of the harbor line.

Having been notified by the local United States engineer that the War Department had approved the new line, Montgomery began the construction of a wharf by the driving of piles partly outside of the line of 1892 and in front of his lots, but wholly inside of the relocated line as indicated on the above map. He did not drive any piles or place any obstruction in the river outside of the relocated line.

On or about November 2, 1898, the Board of Commissioners of the Port took official action about the new line and Montgomery's construction of wharves beyond the line of 1892. They declared of record that the extension of wharves into the river outside of the line of 1892 would greatly damage the Port and its shipping interests, and they ordered Montgomery and those acting under him to cease the construction of any wharf beyond that line and at once to remove any piling or other obstruction that he may have placed in the river in front of his property and

beyond such wharf line. Subsequently, on November 23, 1898, the Port Commissioners took further action and declared that the wharf proposed by said Montgomery would interfere with the navigation of the river by creating shoal places in its now navigable waters and obstruct the work of making and maintaining a channel in the river twenty-five feet in depth, as provided for in the act incorporating the Port of Portland.

Of this action by the local authorities Montgomery and those in his employment were notified in writing.

The suit was brought to prevent the continuance of the work upon which Montgomery entered. The defendant resisted the relief asked and insisted that the action of the Secretary of War gave him complete authority to proceed despite any objections urged by the City and Port of Portland. The defence was sustained by a decree of the court of original jurisdiction and the bill was dismissed. But that decree was reversed by the Supreme Court of Oregon, its conclusions of law being: That the wharf lines established on the 12th day of December, 1892, were then, and ever since have been, the legal and authorized wharf lines of the Port of Portland; and that the respondent had no right to drive piles or extend any wharf beyond the wharf lines so established. The respondent, her attorneys, agents, servants, and employés were by a final order enjoined from driving piles or putting any structure in the river outside of the wharf lines so established; and commanded to remove all piles driven or structures of any description erected therein, beyond said wharf lines. *Portland* v. *Montgomery*, 38 Oregon, 215.

*Mr. John H. Mitchell* for plaintiff in error.

*As to the pleadings.* The facts stated in the bill of complaint are insufficient to constitute a cause of suit.

I. The bill of complaint does not state facts sufficient to constitute a cause of suit in this, that there is no proper averment, either that the wharf being constructed by the respondent, Montgomery, is or ever will be any obstruction whatever to the navigation, or other use of the harbor, or that such wharf is or ever will be a public nuisance, or that its construction as pro-

posed will in any manner, or to any extent, interfere with the work of the Port of Portland in improving such harbor.

The objection that the complaint does not state facts sufficient to constitute a cause of suit is not waived by failure to demur, and this objection may be taken advantage of in the Appellate Court. Hill's Annotated Laws of Oregon, vol. 1, sec. 71, p. 210; *Brown* v. *Emerson*, 3 Oregon, 452; *Evarts* v. *Steger*, 5 Oregon, 147; *Mack* v. *Salem*, 6 Oregon, 275; *Olds* v. *Carey*, 13 Oregon, 362; *Caldwell* v. *Ruddy*, 1 Idaho, N. S. 760; *Willits* v. *Walter*, 32 Oregon, 411.

II. The court below had no jurisdiction of this cause, for the reason that the bill of complaint does not state facts sufficient to confer jurisdiction upon a court of equity. The court below, therefore, did not err in dismissing appellant's bill, and this objection is not waived by failure to demur. Hill's Annotated Laws, vol. 1, sec. 71, p. 210, and authorities, *supra*.

III. The defendant, plaintiff in error here, was entitled to judgment on the pleadings, dismissing the plaintiff's bill of complaint for the reason that no replication whatever was filed by the plaintiffs to the further and separate answer of the defendant setting up new matter. Therefore all the material averments in such separate answer must be taken as admitted by the plaintiffs to be true, and these admissions entitle the defendant to a decree dismissing the plaintiff's bill.

*On the merits.* I. By article 1, section 8, clause 3 of the Constitution of the United States, a grant of power is given to Congress "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

This clause of the Constitution, which confers upon Congress the power to regulate commerce among the several States, leaves to the States, in the absence of Congressional legislation, the power to regulate matters of local interest, which affect international and interstate commerce only incidentally; but the power of Congress over commerce with foreign nations and interstate commerce is exclusive whenever the matter is national in character, and admits of a uniform system or plan of regulation.

In other words, as to those subjects of commerce which are

local or limited in their nature or sphere of operation, such as the erection of bridges, the establishment of harbor lines in harbors, etc., the city may prescribe regulations, until Congress assumes control of them, but as to such as are national in their character, and require uniformity of regulation, the power of Congress is exclusive, and until Congress acts such commerce is entitled to be free from state regulation, exactions and burdens. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Brown* v. *State of Maryland*, 12 Wheat. 419; *Wheeling Bridge Case*, 13 How. 421; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Cannon* v. *New Orleans*, 20 Wall. 577; *Wisconsin* v. *Duluth*, 96 U. S. 388; *Turner* v. *Maryland*, 107 U. S. 38; *South Carolina* v. *Georgia*, 93 U. S. 4; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Brown* v. *Houston*, 114 U. S. 624; *Morgan Steamship Co.* v. *Louisiana*, 118 U. S. 455; *United States* v. *Duluth*, 25 Fed. Cases, 925; *Ouchita Packing Co.* v. *Aiken*, 121 U. S. 444; Gould on Waters, sec. 138, page 254; *Lawton* v. *Steele*, 152 U. S. 137; *Covington & Cincinnati Bridge Co.* v. *Kentucky*, 154 U. S. 204.

II. The establishment of harbor lines in the navigable waters of the United States by Congress is an exercise of the constitutional grant of power to regulate commerce with foreign nations and among the several States, and although the State, or a municipality acting under authority from the State, may, in the absence of any action by Congress, establish such harbor lines, such action relating to a subject of local interest, and which affects international and interstate commerce only incidentally, yet, whenever Congress acts, then the power of the State is at an end, and if any conflict exist between the lines established by the National and state Governments respectively, those of the State must give way to those established by the General Government. Same authorities as above.

III. Congress has jurisdiction, in the exercise of its power to regulate commerce, over the navigable waters of a river lying wholly within the limits of a single State. *Gibbons* v. *Ogden*, 9 Wheaton, 1; *Veasie* v. *Moor*, 14 How. 568; *Willson* v. *Blackbird Creek Marsh Co.*, 2 Peters, 251; *Sillman* v. *Hud-*

son. *River Bridge Co.*, 2 Wall. 403; *Gilman* v. *Philadelphia*, 3 Wall. 713; *The Passaic Bridges*, 3 Wall. 782; *Pound* v. *Turck*, 95 U. S. 459; *Brown* v. *Houston*, 114 U. S. 622; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, and authorities, *supra*.

IV. The action of Congress in enacting sections 7 and 12 of the River and Harbor Act of September 19, 1890, 26 Stat. 454, conferring certain powers on the Secretary of War, is not a delegation of legislative powers, and said sections are constitutional. *Wayman* v. *Southard*, 10 Wheaton, 1–43; Cooley's Constitutional Limitations, 137; Sutherland on Statutory Construction, sec. 68; *United States* v. *The Eliason*, 16 Peters, 291; *Gratiot* v. *United States*, 4 How. 80; *Smith* v. *Whitney*, 116 U. S. 167; *Tilley* v. *R. R. Co.*, 5 Fed. Rep. 641; *R. R. Co.* v. *Dey*, 35 Fed. Rep. 866; *In re Griner*, 16 Wisconsin, 447; *United States* v. *Ormsbee*, 74 Fed. Rep. 209; *Field* v. *Clarke*, 143 U. S. 649–693; *Locke's Appeal*, 72 Penn. St. 491; *South Carolina* v. *Georgia*, 93 U. S. 13; *Miller* v. *Mayor of New York*, 109 U. S. 385; *United States* v. *City of Moline*, 82 Fed. Rep. 596; *United States* v. *North Bloomfield Gravel Mining Co.*, 81 Fed. Rep. 253; *State* v. *Railroad Co.*, 37 N. W. Rep. 782; *State* v. *Railroad Co.*, 35 N. W. Rep. 118; *Stone* v. *Trust Co.*, 116 U. S. 307; *United States* v. *Romard*, 89 Fed. Rep. 157; *Fallbrook Irrigation Dist.* v. *Bradley*, 164 U. S. 112; *State* v. *Gerhardt*, 145 Indiana, 439; sec. 12, Deficiency Act, March 9, 1891, 26 Stat. 800, 868; sec. 4, River and Harbor Act, August 17, 1894, Supp. Rev. Stat. vol. 2, p. 250; *Illinois* v. *Illinois Central R. R. Co.*, 91 Fed. Rep. 955.

V. The power conferred on the Secretary of War by sections 7 and 12 of the River and Harbor Act of September 19, 1890, *supra*, is plenary and the enactment of those sections by Congress was a full exercise of all the constitutional power possessed by Congress in reference to the establishment of harbor lines, while the other portions of the act, relating to bridges, was only a partial exercise of the power exercised by Congress; therefore the two pieces of legislation, relating to the two different subjects, although all in the same act, are radically different in both purpose and scope, and the correct interpretation

and application of the one—that is, that portion of the act relating to bridges, as considered and interpreted in the case of the *Lake Shore and Michigan Railway Company* v. *Ohio,* 165 U. S. 365, can have no legitimate bearing in the interpretation and application of sections 7 and 12 relating solely to the establishment of harbor lines. Sections 4 and 5 and a part of section 7 of the River and Harbor Act of September 19, 1890, relate to bridges, 26 Stat. 426, 453, while section 12 and a part of section 7, same act, relate solely to the establishment of harbor lines. 26 Stat. 426, 453; Act September 19, 1890, 26 Stat. 453–455.

VI. The act of G. D. Meiklejohn, Acting Secretary of War, is the act of the Secretary of War. Rev. Stat. sec. 177; Supp. Rev. Stat. vol. 1, 2d ed. p. 707.

VII. The power given to the Secretary of War by section 12 of the act of September 19, 1890, *supra,* to establish harbor lines, implies necessarily the power to modify, change or create anew. *United States* v. *The Eliason,* 16 Peters, 291; *United States* v. *Romard,* 89 Fed. Rep. 157.

VIII. The facts, as presented by the pleadings and evidence, conferred jurisdiction on the Secretary of War to relocate and reëstablish the harbor line in the manner the same was relocated and reëstablished by him September 23, 1898. Numbers sixth, seventh and eighth of the findings of fact.

IX. The harbor lines caused to be established by the Secretary of War in front of the property of the respondent, Montgomery, August 9, 1892, was on proper application changed and reëstablished by the Secretary of War, September 23, 1898. Sixth, seventh and eighth findings of fact; sec. 12, act of September 19, 1890, 26 Stat. 455.

X. Although it should be conceded that the Secretary of War is without power to change or reëstablish a harbor line previously established by him, as contended for by counsel for appellants, it is clear beyond question that he had by virtue of sections 7 and 12 of the River and Harbor Act of September 19, 1890, *supra,* power to grant a permission to the respondent, Montgomery, to extend his wharf outside the harbor line established August 9, 1892, and having on proper application done

so, neither the State of Oregon, the City of Portland, nor the Port of Portland, had any right or power to prevent it. Sections 7 and 12, River and Harbor Act of September 19, 1890. Sixth, seventh and eighth findings of fact.

XI. The wharf being constructed by respondent is located on lands bordering on the navigable waters of the Willamette River in Portland harbor, within the limits of the City of Portland, the fee of which is in the respondent, James B. Montgomery. Paragraph VII, bill of complaint; answer, paragraph VI; separate answer, paragraph I; fifth finding of fact.

XII. The riparian owner in Oregon, in the absence of restrictive legislation, has the right by the common law to connect his shore line by means of wharves, piers or docks constructed over the shoal or shallow waters immediately bordering upon his land with the waters which are navigable in fact. This he has the right to do not only in his own interest as a riparian proprietor, but as well also in the interest of the public, and of national and interstate commerce. *Railway Company* v. *Schurmeier*, 7 Wall. 272; *Yates* v. *Milwaukee*, 10 Wall. 297; *Weaver* v. *Harbor Commissioners*, 18 Wall. 57; *Dutton* v. *Strong*, 1 Black, 23.

XIII. But in the State of Oregon there is added to this common law right of the riparian owner, *supra*, an express grant from the State. Section 4227, act of 1862, Hill's Code, authorizes the owner of any land in Oregon lying upon any navigable stream, within the corporate limits of any incorporated town, to construct a wharf or wharves upon the same, and to extend such wharf or wharves into such stream beyond the low water mark "so far as may be necessary and convenient for the use and accommodation of ships, or other boats or vessels that may or can navigate such stream." Act of 1862, Hill's Code, sec. 4227.

XIV. The question as to what constitutes a public nuisance must be determined by general and fixed laws, and it is not to be tolerated that the local municipal authorities of a State can declare any particular business or structure a nuisance in a summary mode and enforce its decree at its own pleasure. Whether a bridge or a pier is a public nuisance or not, whether

the same is an obstruction to navigation and commerce or not, is a question of fact, and no simple declaration of a municipality can determine the question. *Dutton* v. *Strong,* 1 Black, 32; *Yates* v. *Milwaukee,* 10 Wall. 504; Angell on Tide Waters, 196; *West Hartford* v. *Hartford Water Co.,* 68 Connecticut, 323; *Milne* v. *Davidson,* 16 Am. Dec. 195; Cooley on Constitutional Limitations, 6th ed. 741, note; *Everett* v. *Council Bluffs,* 46 Iowa, 67; *Railroad Co.* v. *Joliet,* 79 Illinois, 44; *Butchers' Union* v. *Crescent City,* 111 U. S. 746; *Smith* v. *Minto,* 30 Oregon, 353; 2 Dillon on Mun. Corp. 4th ed. sec. 800; *Grossman* v. *City of Oakland,* 30 Oregon, 478.

XV. The provision of the city charter conferring power on the City of Portland, " to regulate the building of wharves and the driving of piles in the Willamette River within the limits of the city, and to establish a line beyond which wharves shall not be built nor piles be driven " (bill of complaint, Abstract of Record, 2), does not authorize it to declare by a special ordinance that a private wharf is an obstruction to navigation and a public nuisance, if in point of fact it is not such obstruction or a public nuisance. Authorities, *supra.*

XVI. Conceding the right of both the City of Portland and the Port of Portland, as claimed by appellants, to establish wharf lines in the harbor of the City of Portland, it is respectfully submitted that any action taken by the respondents in that regard in order to have any binding effect whatever, must be reasonable, and we submit that the location of the line by the City of Portland was an unreasonable exercise of municipal power upon the part of appellants and binds nobody. Authorities, *supra.*

XVII. Conceding for the argument that the City of Portland had the power to establish a wharf line, and to declare that wharves should not be extended outside of such line, even then the simple declaration of the municipality that the wharf was being constructed outside of such lines, and that the construction of the same was an obstruction to navigation and therefore a public nuisance, will not determine the question; and on such a declaration alone in the complaint, especially if the answer denies that the construction of the wharf does in any manner

interfere with navigation or commerce, or the improvement of the river, and that it is not a nuisance, either public or private, the plaintiff, the municipality, must prove by evidence, other than the mere declaration of the city itself, that the structure does interfere with navigation, or the improvement of the river or commerce, and that it is a public nuisance. *Yates* v. *Milwaukee*, 10 Wall. 498; Angell on Tide Waters, 196, and authorities, *supra*.

XVIII. In the incorporation act of the Port of Portland there is no authority whatever conferred upon the Port of Portland to establish harbor lines or wharf lines. The act, therefore, upon the part of the commissioners of the Port of Portland in establishing by resolution wharf lines on both sides of the Willamette River, was *ultra vires* and amounts to nothing. Secs. 6, 7, 12, River and Harbor Act, September 19, 1890, 26 Stat. 453, 456; sec. 7, act 1890, as amended July 13, 1892, Supp. Rev. Stat. vol. 2, p. 30.

XIX. The harbor lines having been established in the Portland harbor by the Secretary of War, August 9, 1892, in pursuance of the power conferred on him by the twelfth section of the River and Harbor Act of September 19, 1890, 26 Stat. 46, therefore, the ordinance of the common council of the City of Portland, approved December 12, 1892, establishing harbor or wharf lines, Abstract of Record, 2, was unconstitutional and wholly inoperative, except in so far as the harbor or wharf line established by such ordinance did not conflict with the line established by the Secretary of War. Authorities, *supra*.

XX. From the pleadings in this case it is shown, and conceded by complainants, that no action whatever had been taken either by the City of Portland or the Port of Portland, establishing either harbor or wharf lines in the harbor of Portland prior to August 9, 1892, when the harbor lines in said harbor were caused to be established by the Secretary of War. And it is further shown and conceded by said bill of complaint, that the State of Oregon had not, prior to September 19, 1890, the date of the passage of the River and Harbor Act, *supra*, conferring power on the Secretary of War to cause harbor lines to be established in the navigable harbors of the United States, passed

any act conferring upon the City of Portland power to establish harbor or wharf lines. This power on the part of the city only dates from February 19, 1891. When, therefore, the General Government, in the interest of international and interstate commerce, assumed jurisdiction of the waters of the Portland harbor by establishing harbor lines therein, neither the State of Oregon, nor the City of Portland, nor the Port of Portland, had established or attempted to establish any such harbor lines.

XXI. " The authorities of a town will not be permitted to locate an imaginary deep water line away from the navigable part of a river or bay and without making the water navigable up to that line, so as to deprive the riparian owners of the advantages of wharves, under a provision of law conferring upon such town the right to regulate the line of deep water to which wharves may be built." *Wool* v. *Edenton*, 117 S. C. 1, and authorities, *supra.*

XXII. Whenever a police power is so exercised by a State, as to come within the domain of Federal authority, as defined by the Constitution, the latter must prevail. *Gibbons* v. *Ogden*, 9 Wheat. 1, 210 ; *Henderson* v. *The Mayor*, 92 U. S. 259, 272 ; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 661 ; *Morgan* v. *Louisiana*, 118 U. S. 464.

XXIII. The police power does not extend to depriving any person of the lawful use of property without due process of law, and without just compensation. *Matter of Jacobs*, 98 N. Y. 110 ; *Matter of Cheesbrough*, 78 N. Y. 232 ; *Rockwell* v. *Nearung*, 35 N. Y. 302 ; Fourteenth Amendment, Const. U. S.

XXIV. " Wharves, levees and landing places are essential to commerce by water, no less than a navigable channel and a clear river." *Transportation Co.* v. *Parkersburg*, 107 U. S. 707. No foreign or interstate commerce can be carried on with the citizens of a State without the use of a wharf. Mr. Justice Field in *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 205.

*Mr. Thomas D. Rambaut* and *Mr. C. E. S. Wood* for defendants in error, with whom *Mr. George H. Williams* was on the brief.

The material facts in the case at bar are quite similar to

those in the case of *Cummings* v. *Chicago*, decided by this court February 23, 1903, where it is held that private parties must obtain the assent of the constituted agencies of the State as well as the assent of the agent of the National Government before erecting a structure in navigable waters wholly within the State, and the authority of the decision in that case compels the affirmance of the judgment of the Supreme Court of Oregon in this case unless the court is persuaded to overthrow the doctrine it has so recently enunciated. *Cummings* v. *Chicago*, 188 U. S. 410. No ground for the reversal of that doctrine has been suggested, and a review of the decisions by this court shows that it has been the established policy of the National Government to leave to the several States plenary authority over such purely local matters as the location of wharf lines in navigable waters lying wholly within the limits of the respective States. *Gibbons* v. *Ogden,* 9 Wheaton, 1 ; *Willson* v. *Black Bird Creek Marsh Co.,* 2 Pet. 245 ; *Gilman* v. *Philadelphia,* 3 Wallace, 713 ; *Keokuk N. L. P. Co.* v. *Keokuk,* 95 U. S. 377 ; *Mobile County* v. *Kimball,* 102 U. S. 238 ; *Cincinnati &c. Packet Co.* v. *Trustees Catlettsburg,* 105 U. S. 559 ; *Parkersburg Transportation Co.* v. *Parkersburg,* 107 U. S. 801 ; *Ouachita Packet Co.* v. *Aiken,* 121 U. S. 444 ; *Illinois Central R. R.* v. *Illinois,* 146 U. S. 387 ; *Willamette Bridge Co.* v. *Hatch,* 125 U. S. 1, 17.

The River and Harbor Act passed by Congress in 1890, does not expressly exclude the previously exercised authority of the States over such matters, but deals with the harbor area only, and leaves to the respective States plenary control over the wharf area wholly within their limits. The established policy of this Government in permitting States to control wharves is not to be overthrown by a mere inference. *Lake Shore & Mich. So. Ry.* v. *Ohio,* 165 U. S. 365 ; *Cummings* v. *Chicago, supra.* The delegation to the Secretary of War of authority to establish a line beyond which no wharf shall extend into the protected harbor area, without his permission, does not confer upon that officer the power to give original authority to build wharves in the wharf area between the protected harbor area and the shore. If the act of Con-

gress of 1890 purports to confer upon the Secretary of War this authority, it is tantamount to conferring upon that officer the power to regulate commerce with foreign nations and among the several States, and is unconstitutional. Art. X, Amendments to U. S. Constitution.

Congress and the States have concurrent authority over navigable waters wholly within the States until Congress excludes the State's authority. The intention to exclude the State's authority must be clearly manifest, and while, no doubt, this court could confirm the judgment of the Supreme Court of Oregon upon the authority of the recently decided *Cummings* case, still this court should take advantage of the opportunity to declare invalid the act of Congress of September 19, 1890, before further mischief be done under it. *Gibbons* v. *Ogden, supra.* The attempt of the Secretary of War to reëstablish the harbor line was inoperative. If his authority be limited to a mere executive act he became *functus officio* when the original harbor line was established; but if his authority be to locate harbor or wharf lines at his discretion, then Congress attempted to transfer to this officer the regulation of international and interstate commerce, and the act is void. The power to regulate commerce is wholly a delegated power from the States, and it cannot be redelegated by Congress. Art. X, Amendments to U. S. Constitution. It would be contrary to the fundamental principles of this Government to permit a body elected by the people, as Congress is, to turn over to an appointive officer the power entrusted to it. The incongruity of the act is apparent when it is realized that the mere deputy of this appointed cabinet officer can exercise this enormous national power during the temporary absence of his chief, as was done in this case.

Mr. Justice Harlan, after making the foregoing statement, delivered the opinion of the court.

This case cannot be distinguished in principle from *Cummings* v. *City of Chicago*, 188 U. S. 410, decided at the present term. In that case it appeared that the Secretary of War, proceeding

under the act of September 19, 1890, and other legislation of
Congress, had given his assent to the rebuilding of a certain
dock in Calumet River, within the limits of Chicago ; which
river, being one of the navigable waters of the United States,
had been surveyed by the direction of the Government, and for
its improvement Congress had made appropriations from time
to time.    When that action was commenced there was in force
an ordinance of the City of Chicago, enacted under the author-
ity of the State, forbidding the construction of any pier, dock
or other structure in navigable waters within the limits of that
city without first obtaining a permit from its Department of
Public Works.    And the question was whether under the acts
of Congress, including that of 1890, the above ordinance was of
any avail as against the permit of the Secretary.

 . The contention of the plaintiff was that Congress, by its ap-
propriations for the improvement of Calumet River, had taken
such complete possession of that stream as to deprive the local
authorities of all power in respect of the building or maintenance
of structures in that river.    In determining that question the court
took into consideration various enactments, including the tenth
section of the River and Harbor Act of March 3, 1899, c. 425,
(passed after the present suit was brought,) as follows : "That
the creation of any obstruction not affirmatively authorized by
Congress, to the navigable capacity of any of the waters of the
United States is hereby prohibited ; and it shall not be lawful
to build or commence the building of any wharf, pier, dolphin,
boom, weir, breakwater, bulkhead, jetty, or other structures in
any port, roadstead, haven, harbor, canal, navigable river, or
other water of the United States, outside established harbor
lines, or where no harbor lines have been established, except on
plans recommended by the Chief of Engineers and authorized
by the Secretary of War ; and it shall not be lawful to excavate
or fill, or in any manner to alter or modify the course, location,
condition, or capacity of, any port, roadstead, haven, harbor,
canal, lake, harbor of refuge, or inclosure within the limits of
any breakwater, or of the channel of any navigable water of the
United States, unless the work has been recommended by the

Chief of Engineers and authorized by the Secretary of War prior to beginning the same." 30 Stat. 1121, 1151.

In that case we recognized the doctrine as long established that the authority of a State over navigable waters entirely within its limits was plenary, subject only to such action as Congress may take in execution of its power under the Constitution to regulate commerce among the several States. After referring to *Lake Shore & Michigan Railway* v. *Ohio,* 165 U. S. 365, 366, 368, (1896), we said that if Congress had intended by its legislation, prior to that decision, "to assert the power to take under national control, for every purpose, and to the fullest possible extent, the erection of structures in the navigable waters of the United States that were wholly within the limits of the respective States, and to supersede entirely the authority which the States, in the absence of any action by Congress, have in such matters, such a radical departure from the previous policy of the Government would have been manifested by clear and explicit language. In the absence of such language it should not be assumed that any such departure was intended. We do not overlook the long-settled principle that the power of Congress to regulate commerce among States ' is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the Constitution.' *Gibbons* v. *Ogden,* 9 Wheat. 1, 196 ; *Brown* v. *Maryland,* 12 Wheat. 419, 446 ; *Brown* v. *Houston,* 114 U. S. 630. But we will not at this time make any declaration of opinion as to the full scope of this power or as to the extent to which Congress may go in the matter of the erection, or authorizing the erection, of docks and like structures in navigable waters that are entirely within the territorial limits of the several States. Whether Congress may, against or without the expressed will of a State, give affirmative authority to private parties to erect structures in such waters, it is not necessary in this case to decide. It is only necessary to say that the act of 1899 does not manifest the purpose of Congress to go to that extent under the power to regulate foreign and interstate commerce and thereby to supersede the original authority of the States. The effect of that act, reasonably interpreted, is to make the erec-

tion of a structure in a navigable river, within the limits of a State, depend upon the concurrent or joint assent of both the National Government and the state government. The Secretary of War, acting under the authority conferred by Congress, may assent to the erection by private parties of such a structure. Without such assent the structure cannot be erected by them. But under existing legislation they must, before proceeding under such an authority, obtain also the assent of the State acting by its constituted agencies."

There is nothing in the present case to distinguish it from the *Cummings* case. While section 12 of the act of 1890 forbade the construction or extension of piers, wharves, bulkheads, or other works, beyond the harbor lines established under the direction of the Secretary of War, in navigable waters of the United States, "except under such regulations as may be prescribed from time to time by him," it does not follow that Congress intended in such matters to disregard altogether the wishes of the local authorities. Its general legislation so far means nothing more than that the regulations established by the Secretary in respect of waters, the navigation and commerce upon which may be regulated by Congress, shall not be disregarded even by the States. Congress has not, however, indicated its purpose to wholly ignore the original power of the States to regulate the use of navigable waters entirely within their respective limits. Upon the authority then of *Cummings* v. *City of Chicago*, and the cases therein cited—to which we may add *Willamette Bridge. Co.* v. *Hatch*, 125 U. S. 1—we hold that, under existing enactments, the right of private persons to erect structures in a navigable water of the United States that is entirely within the limits of a State, cannot be said to be complete and absolute without the concurrent or joint assent of both the General and state Governments. Of course, the right of the Government to erect public structures in a navigable water of the United States rests upon different grounds.

In this view it is unnecessary to consider the general question discussed at the bar whether Congress has or not, by some of its enactments relating to structures in navigable waters, committed to the Secretary of War the determination of mat-

ters that are legislative in their nature and which, under the Constitution, could only be determined, in the first instance, by Congress. It is sufficient now to say that the legislation upon which the defendant relies to justify the construction of the works in question does not, when reasonably interpreted, indicate any purpose upon the part of Congress to assume such complete and absolute control of the navigable waters of the United States as will make of no avail the action of the States in respect of the erection by private parties of structures in waters wholly within their respective limits.

The judgment of the Supreme Court of Oregon is

*Affirmed.*