Fred R. FIELD, Jr., individually and as President of the New York District Council of the International Longshoremen's Association, Executive Offices of Local 856, and on behalf of all longshoremen, seamen, and citizens whose rights are involved and/or have an interest in the establishment of a World Trade Center in the downtown area of the Borough of Manhattan, City and State of New York, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

No. 67 Civ. 1723.

United States District Court,
S. D. New York.

March 28, 1972.

Jacob Rassner, New York City, for plaintiff.

Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., for defendant United States by Joseph D. Danas, Asst. U. S. Atty., of counsel.

Sidney Goldstein, New York City, Gen. Counsel, for defendant, Port of New York Authority by Joseph Lesser, Isobel E. Muirhead, John Graubard, New York City, of counsel.

J. Lee Rankin, Corp. Counsel, for defendant, The City of New York by Joachim Titolo, Donald E. Biedeman, Alan Brutten, Asst. Corp. Counsel, New York City, of counsel.

OPINION

BAUMAN, District Judge.

Defendants United States of America and Port of New York Authority have moved separately pursuant to Rules 12 (b) (1) and 12(b) (6) of the Federal Rules of Civil Procedure to dismiss this action for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. Defendant City of New York has joined in the motions. For the reasons stated below the motions of all defendants will be granted.

This action grows out of the construction of the World Trade Center in downtown Manhattan. Plaintiff Field, President of the New York Counsel of the International Longshoremen's Association, sues individually and on behalf of a class consisting of "all longshoremen, seamen and citizens whose rights are involved and/or have an interest in the establishing of a world trade center in the downtown area of Manhattan, City and State of New York."[1] As the complaint alleges, the Port of New York Authority is a municipal corporate instrumentality created in 1921 by compact of the States of New York and New Jersey with the consent of the Congress of the United States. It is responsible for maintaining bridges, marine and air terminals and other facilities within the New York Port District. The complaint further alleges the Port of New York Authority undertook the construction of certain buildings to be known as the World Trade Center after it had represented to the public that "the undertaking would be of financial and other economic benefit to the people of New York and that it would create improvement in all forms of commerce and trade."

The complaint rambles on alleging that instead of benefiting the people of New York and the Port District, creation of

---

1. Because of the disposition rendered, it is not necessary to determine whether this is in fact a class action under Rule 23.

the World Trade Center has harmed them in the following ways:

1. Longshoremen and seamen have lost jobs and been deprived of a so-called "Constitutional right to the use and benefit of waterfront property and piers and the free use of navigable rivers" because land fill taken from the excavation at the site of the World Trade Center was used to fill in an area of approximately 23.5 acres in the Hudson River on the west side of Manhattan, eliminating, in the process, Piers #3–13 along the riverfront.

2. The citizens of New York City have been deprived of tax revenue by the illegal grant of tax exempt status to the World Trade Center by the States of New York and New Jersey.

Plaintiff also claims there is uncertainty concerning the title to the upland created by the fill and as to the Port Authority's right to engage in real estate development. He questions its obligations under the bond issue which finances the Port Authority Trans-Hudson (PATH) railway system as well as the federal tax exempt status of interest on the bonds used to finance the World Trade Center.

## I.

■■ Turning first to the question of subject matter jurisdiction as to the defendant United States of America, plaintiff makes the boot-strap argument that jurisdiction exists because the action is for a declaratory judgment pursuant to Title 28, U.S.C.A., Section 2201. However, the Declaratory Judgment Act by itself does not confer subject matter jurisdiction on the federal district courts. Skelly Oil Company v. Phillips Petroleum Co., 339 U.S. 667, 671, 672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); R.E.D.M. Corp. v. LoSecco, 291 F.Supp. 53, 58 (S.D.N.Y. 1968), aff'd 412 F.2d 303 (2d Cir. 1969). Some additional statutory basis must be stated in the complaint. It must also be borne in mind that no questions involving federal taxes may be considered under the Declaratory Judgment Act. Title 28, U.S.Code, Section 2201.

Plaintiff's only jurisdictional basis other than the Declaratory Judgment Act is alleged to be the Federal Tort Claims Act, Title 28, U.S.Code, Section 1346. In that connection, he contends that the Secretary of the Army acting through the Corps of Engineers illegally issued a permit [2] which allowed the Port Authority (with the permission of New York City) to place the fill generated by the construction of the World Trade Center behind the bulkheads along the Hudson River shoreline which formerly supported Piers 3 to 13. He states that this deprived longshoremen of their jobs and was in violation of their "Constitutional rights to the use of the piers."

■ Government regulation of economic and commercial activities has been sustained repeatedly in the face of claimed denials of "substantive due process of law" such as plaintiff makes here.[3]

---

2. The permit was issued pursuant to Title 33 U.S.C. § 403, which provides:

"The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful

to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

3. See the long line of cases following Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) (state legislation) and United States v. Carolene Products, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) (federal legislation).

The piers in question, except to the extent that Congress imposed limitations, were under the control of the City of New York and were subject to alteration or removal for a public purpose. 1961 City Charter Sections 703, 704; Cf. Montgomery v. Portland, 190 U.S. 89, 105, 23 S.Ct. 735, 47 L.Ed. 965 (1903). Plaintiff does not allege a proprietary or franchise interest in the piers. Compare Appleby v. City of New York, 271 U.S. 364, 46 S.Ct. 569, 70 L.Ed. 992 (1926). His claim of damage rests on the assertion that he or the longshoremen or seamen who had worked there will find no employment at that place in the future. At most, this might constitute an interference with contract rights. But even assuming such an interference, the Federal Tort Claims Act by its terms provides that it shall not apply to "any claim arising out of . . . interference with contract rights." Title 28, U.S. Code, Section 2680(h).

Furthermore, that Act prohibits the institution of an action thereunder "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." Title 28, U.S.Code, Section 2675. No such procedure appears to have been followed here.

4. Title 5 U.S.C. § 701 et seq.

5. Title 28 U.S.C. §§ 1331, 1337.

6. Pub.L. 90–483, Title I, § 113, Aug. 13, 1968, 82 Stat. 736, Title 33 U.S.C. § 59c–1, which provides:

"Those portions of the East and Hudson Rivers in New York County, State of New York, lying shoreward of a line within the United States Pierhead Line *as it exists on August 13, 1968,* of this Act and bounded on the north by the north side of Spring Street extended westerly and the south side of Robert F. Wagner, Senior Place extended eastwardly, are hereby declared to be nonnavigable waters of the United States within the meaning of the laws of the United States. This declaration shall apply only to portions of the above-described area which are bulkheaded and

▮ It might be argued that the possibility of subject matter jurisdiction exists under the judicial review provisions of the Administrative Procedure Act[4] or under the general "federal question" provisions of Title 28, U.S.Code.[5] However, no relief can be afforded by those Sections because of the enactment of legislation in 1968 which had the effect of ratifying the issuance of the permit and eliminating the question of its validity by declaring the filled area to be "nonnavigable waters of the United States within the meaning of the laws of the United States",[6] thus removing the matter from the ambit of Title 33, U.S.Code, Section 403.[7]

## II.

The complaint fails to allege any statutory basis for jurisdiction as to defendants City of New York and Port of New York Authority. As noted above, any possible "federal question" jurisdiction was eliminated by statute and, as previously set forth, plaintiff's claim of deprivation of a Constitutional right to use the piers is frivolous.

▮ His request for a declaration concerning the obligations of the Port Authority "to provide adequate financing for the continued operation of the Port Authority Trans-Hudson system" presents a non-justiciable issue; that is,

filled. Plans for bulkheading and filling shall be approved by the Secretary of the Army, acting through the Chief of Engineers, on the basis of engineering studies to determine the location and structural stability of the bulkheading and filling in order to preserve and maintain the remaining navigable waterway. Local interests shall reimburse the Federal Government for any engineering costs incurred under this section."

7. See footnote 2 supra. The parties in their memoranda to this Court and in oral argument have raised the issue of the effect of Title 33 U.S.Code § 59c–1 on this action. All parties agree that the legislation applies to the land fill area in question here; their dispute, however, concerns the legal effect of that legislation on the land fill area.

there is no "actual controversy" of which the Court might assume jurisdiction. *A fortiori* there can be no such issue concerning potential limitations on future real estate operations in which the Port Authority may become involved. The claim concerning title to the upland created by placing the fill in the river is purely a question of state law and does not raise any federal question.

Lastly, plaintiff claims the grant of tax exempt status to the World Trade Center by the States of New York and New Jersey constitutes "an unfair competitive advantage to a real estate development." This may be read as charging a violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, although that is not specifically alleged. If that is what is intended, the Court would have jurisdiction, in its discretion, under the Declaratory Judgment Act to determine his request for a declaration of "what, if any, immunity from taxation the defendant Port of New York Authority has or would be entitled to in the construction, development and operation of the contemplated World Trade Center." [8] I choose to decline to entertain that claim.

Issues of state taxation and public law are more appropriately heard in the state courts, at least in circumstances such as these. Moreover, the New York Courts have already entertained a number of suits attacking the constitutionality of that legislation [9] and have uni-formly resolved them in favor of the project. See Courtesy Sandwich Shops v. Port of New York Authority, 12 N.Y. 2d 379, 240 N.Y.S.2d 1, 190 N.E.2d 402 (1963), appeal denied for want of a substantial Fed. question, 375 U.S. 78, 84 S.Ct. 194, 11 L.Ed.2d 141 (1963); In Matter of the Port of New York Authority (World Trade Center), 18 N.Y.2d 250, 273 N.Y.S.2d 337, 219 N.E.2d 797 (1966), cert. denied sub nom. McInnes v. Port of New York Authority, 385 U.S. 1006, 87 S.Ct. 712, 17 L.Ed.2d 544 (1967); *cf.* Bush Terminal Co. v. City of New York et al., 282 N.Y. 306, 26 N.E. 2d 269 (1940).

*Courtesy, supra,* presented a challenge to the statutory authorization granting eminent domain powers to the Port Authority for the purposes of the World Trade Center. The Court of Appeals found that the project was for a "public purpose" and sustained the validity of the entire legislative chapter.

Finally, plaintiff's sincerity in raising the issue of tax exemption is open to question. He has not briefed that issue in the five years which have elapsed since this suit was filed. Additionally, in his Memorandum in Opposition to the Motion to Dismiss filed April 30, 1971, plaintiff stated that this entire suit could be resolved if the Port Authority went forward on a stipulation filed July 24, 1967 providing for the creation of a committee to study the feasibility of constructing a pilot terminal for merchant container vessels on the new land fill

8. See Complaint, Request For Relief, Par. 6.

9. Chapter 209 of the 1962 Session Laws of New York [N. Y. Unconsolidated Laws § 6601 et seq. (McKinney, 1971)] provides the authorization for the World Trade Center. Section 11 of that chapter grants tax exempt status to the project and provides in pertinent part:
    "The port authority shall be required to pay no taxes or assessments upon any of the property acquired or used by it for any of the purposes of this act or upon any deed, mortgage or other instrument affecting such property or upon the recording of any such instru-ment. However, to the end that no municipality shall suffer undue loss of taxes and assessments by reason of the acquisition and ownership of property by the port authority for any of the purposes of this act, the port authority is hereby authorized and empowered, in its discretion, to enter into a voluntary agreement or agreements with any municipality whereby the port authority will undertake to pay in lieu of taxes a fair and reasonable sum or sums annually in connection with any real property acquired and owned by the port authority for any of the purposes of this act. * * *."

site thereby preserving jobs for longshoremen. This is apparently his real concern and that is an issue into which this Court should not be drawn.

In view of this factor and the continued findings by the highest tribunal of the State of New York that the World Trade Center was created for a "public purpose" and in view of the findings by that Court that the chapter of legislation authorizing that project is constitutional, I decline to exercise my discretion under the Declaratory Judgment Act to entertain this claim.

For the above reasons, the motions of all parties to dismiss is granted.