**DELAWARE RIVER JOINT TOLL BRIDGE COMMISSION**

v.

**Alexander R. MILLER and R. Chapman Carver.**

**Civ. A. No. 21118.**

United States District Court
E. D. Pennsylvania.

Dec. 28, 1956.

Raymond J. Bradley, Philadelphia, Pa., J. Desmond Kennedy & James E. O'Brien, Scranton, Pa., for plaintiff.

H. P. McFadden, Bethlehem, Pa., for defendant Miller.

Frank B. Murdoch, of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant Carver.

VAN DUSEN, District Judge.

This case comes before the court on defendants' motions to dismiss the action on the ground of lack of jurisdiction over the subject matter of the action.[1] The complaint contains two alternative causes of action against each defendant, members of plaintiff Commission (a public corporation created by the laws of Pennsylvania, 36 P.S. § 3401 and New Jersey, N.J.S.A. 32:8–1 ff. and consent[2] to the creation of which was given by Congress) during the period covered by the complaint, for the recovery of amounts alleged to be paid to each of them as salaries without legal authority. One cause of action against each defendant is based on the right to recover money had and received by defendants from, and on account of, plaintiff and the alternative cause of action is based on the allegation that the money has been received by defendants in breach of trust.

Plaintiff contends this court has jurisdiction on two distinct grounds: first, diversity of citizenship, 28 U.S.C.A. § 1332(a) (1), since it alleges that it is a New Jersey corporation and the defendants are Pennsylvania citizens; and, second, the case "arises under the Constitution [or] laws * * * of the United States" as those terms are used in 28 U.S.C.A. § 1331. These contentions will be treated separately.

1. The motions to dismiss as filed contain an additional ground, namely, "the complaint fails to state a claim * * * upon which relief can be granted," but this ground was withdrawn at the time of the argument on these motions.

2. Although the complaint alleges that Congress approved the interstate compact, the Act of Congress of August 30, 1935, 49 Stat. 1051, and the subsequent acts of Congress concerning supplements to the Compact, Act Aug. 4, 1947, 61 Stat. 752, Act March 31, 1952, 66 Stat. 28, states "That the *consent* of Congress is hereby given to the compact or agreement set forth below * * * Provided, That nothing herein contained shall be construed to affect, impair, or diminish any right, power, or jurisdiction of the United States * * * over or in regard to any navigable waters, or any commerce between the States or with foreign countries, or any bridge, railroad, highway, pier, wharf, or other facility or improvement, or any other person, matter, or thing, forming the subject matter of the aforesaid compact or agreement or otherwise affected by the terms thereof." (Emphasis supplied.) 49 Stat. 1058–1059, § 9.

## I. *Diversity of citizenship* [3]

■ In order to decide this question, a federal district court finds itself in the unhappy position of being asked to choose between two opposing 19th Century decisions of the United States Supreme Court, containing language developing the doctrine that a corporation is a citizen of the state of its incorporation because all its shareholders are presumed to be citizens of that state.[4] The position, supporting defendants' contention in this case, taken by Chief Justice Taney in the Wheeler case finds direct support in dictum in Memphis & C. R. Co. v. State of Alabama, 1883, 107 U.S. 581, 585, 2 S.Ct. 432, 436, 27 L.Ed. 518, where the court said:

> "The defendant, being a corporation of the state of Alabama, has no existence in this state as a legal entity or person, except under and by force of its incorporation by this state; and, although also incorporated in the state of Tennessee, must, as to all its doings within the state of Alabama, be considered a citizen of Alabama, *which cannot sue* or be sued by another citizen of Alabama in the courts of the United States." (Emphasis supplied.)

This rule of the Memphis case appears to have been followed by the United States Supreme Court in all its decisions since the Nashua case. See Patch v. Wabash R. Co., 1907, 207 U.S. 277, 283, 28 S.Ct. 80, 52 L.Ed. 204; Jacobson v. New York, New Haven & Hartford Railroad Co., 1945, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067; [5] and Seavey case, supra (footnote 4), 197 F.2d at page 487; and cases cited in those cases.[6] Under these circumstances, the United States Supreme Court would appear to require that defendants, being sued by a multi-state corporation in a federal court located in any state where it had been incorporated, must be citizens of a state other than the state of the forum if jurisdiction is to be based on diversity of citizenship.

■ Such a conclusion is in accordance with the public policy, recognized in

3. On this point, this plaintiff public corporation is being treated as similar to a multi-state private corporation, in view of the position taken in Bartron v. Delaware River Joint Toll Bridge Commission, 3 Cir., 1954, 216 F.2d 717, 719, certiorari denied 1955, 348 U.S. 943, 75 S.Ct. 364, 99 L.Ed. 738.

4. Compare Ohio & Mississippi R. Co. v. Wheeler, 1862, 1 Black. 286, 66 U.S. 286, 17 L.Ed. 130 (hereinafter called Wheeler case), and Nashua & L. Railroad Corp. v. Boston & Lowell Railroad Corp., 1890, 136 U.S. 356, 10 S.Ct. 1004, 34 L.Ed. 363 (hereinafter called Nashua case). As pointed out by Judge Goodrich in Gavin v. Hudson & Manhattan R. Co., 3 Cir., 1950, 185 F.2d 104, 107, 27 A.L.R.2d 739, the Supreme Court authorities in this field are sparse and not as helpful as on most legal points. See, also, Seavey v. Boston & Maine R. R., 1 Cir., 1952, 197 F.2d 485, 487. For a collection of cases on this point, see 27 A.L.R.2d 748–792.

5. Affirming per curiam, 1 Cir., 1953, 206 F.2d 153, which relied on the reasoning of the Seavey case, supra (footnote 4).

6. The Nashua case has been criticized and considered as not in harmony with the other United States Supreme Court decisions in Town of Bethel v. Atlantic Coast Line R. Co., 4 Cir., 1936, 81 F.2d 60, 68–69, certiorari denied 1936, 298 U.S. 682, 56 S.Ct. 952, 80 L.Ed. 1402, where diversity jurisdiction was denied on the ground that the plaintiff multi-state corporation had been reincorporated in the forum where defendant was located. The Nashua case appears to hold that, under the statutory actions involved in that case, a basic New Hampshire corporation, which had to ratify the subsequent Massachusetts corporation's creation, was the plaintiff. See, for example, 136 U.S. at pages 372–373 and 378–379, 10 S.Ct. at pages 1007, 1009 of the opinion. Although the Gavin case, supra (footnote 4), has made clear, 185 F.2d at page 106, that the state of a multi-state corporation's first incorporation is not significant in this Circuit, the creation of plaintiff corporation by the Pennsylvania General Assembly (compare Acts of June 25, 1931, P.L. 1352, and May 18, 1933, P.L. 827, 36 P.S. § 3401, with Act approved June 11, 1934, L.1934, c. 215, N.J.S.A. 32:8–1 ff.) negatives any argument that a basic New Jersey corporation is involved and makes the Nashua case distinguishable on its facts.

this Circuit,[7] that federal courts " 'should not be astute to widen federal diversity jurisdiction.' "[8] This result is not inconsistent with the underlying purpose of the diversity clause in Article III, Section 2, of the Constitution,[9] which was to prevent the obstruction of the administration of justice by "state attachments, state prejudices, state jealousies and state interests," [10] since plaintiff, as a creature of the Pennsylvania legislature, will clearly receive fair treatment in the Pennsylvania courts.[11]

## II. *A case arising under the Constitution or laws of the United States*

Plaintiff's other ground for claiming that jurisdiction exists is that this case "arises under the Constitution, laws or treaties of the United States." 28 U.S.C.A. § 1331.[12] Plaintiff contends that this is such a case, both because of the acts of Congress consenting to the compact creating plaintiff corporation (see footnote 2 above) and because of other Congressional statutes [13] concerning the amount of the tolls to be levied for use of plaintiff's bridges across the Delaware River.

The Supreme Court has held that 28 U.S.C.A. § 1331 only applies

---

**7.** In McCoy v. Siler, 3 Cir., 1953, 205 F.2d 498, 500–501, the court said:

"There is no hardship on the plaintiff if he cannot get into federal court in the Eastern District of Pennsylvania. The state court is open to him. There is no hardship on the defendant if we should decide that the venue provisions have been waived. He is subject to suit in state court anyway, and we take it that it is no harder to defend in one court than the other. Nor can we see any social issue involved. The only policy consideration which is apparent is that we should not be astute to widen federal diversity jurisdiction." See, also, City of Indianapolis v. Chase National Bank, 1941, 314 U.S. 63, 76–77, 62 S.Ct. 15, 86 L.Ed. 47; Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 673, 70 S.Ct. 876, 94 L.Ed. 1194.

**8.** Jacobson v. New York, N. H. & H. R. Co., 1 Cir., 1953, 206 F.2d 153, 155, affirmed 1954, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067.

**9.** The Jacobson case, supra (footnote 8), has pointed out that this is a proper consideration for a federal court in considering the application of diversity jurisdiction.

**10.** In Martin v. Hunter's Lessee, 1816, 1 Wheat. 304, 307, 14 U.S. 304, 307, 4 L. Ed. 97, the Supreme Court said:

" * * * The Constitution has presumed (whether rightly or wrongly we do not inquire) that state attachments, state prejudices, state jealousies, and state interests, might sometimes obstruct, or control, or be supposed to obstruct or control, the regular administration of justice * * *. No other reason than that which has been stated can be assigned, why some, at least, of those cases

should not have been left to the cognizance of the state courts."

**11.** An able writer in this field has taken the position that the principal fear leading to the inclusion of the diversity jurisdiction in the Constitution was the state legislatures saying "the real fear was not as much of state courts as of state legislatures * * * (including a fear of the practice of legislative review prevailing in some states)." See Friendly, "The Historic Basis of the Diversity Jurisdiction," 41 Harv.L.Rev. 483, 495–8 (1928). See, also, Frankfurter, "Distribution of Judicial Power Between United States and State Courts," 13 Corn.L.Q. 499, 520 (1928), and Wechsler, "Federal Jurisdiction and the Revision of the Judicial Code," 13 Law and Contemporary Problems 216, 234–40 (1948).

**12.** This section implements Article III, Section 2, of the Constitution, which states that "the judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."

**13.** The other federal statutes which plaintiff contends create a federal question under 28 U.S.C.A. § 1331 are: 49 Stat. 1051, Act Aug. 30, 1935; 49 Stat. 1252, Act May 1, 1936; 60 Stat. 847, Act Aug. 2, 1946, as amended, 61 Stat. 501, Act July 26, 1947, 63 Stat. 380, Act June 30, 1949 (cf. 33 U.S.C.A. §§ 525, 526); 60 Stat. 848, Act Aug. 2, 1946, (cf. 33 U.S. C.A. § 529) ; 61 Stat. 752, Act Aug. 4, 1947; 62 Stat. 1183, Act June 30, 1948; and 66 Stat. 28, Act March 31, 1952. It is clear that these statutes do not supplant the state-created rights of action for money had and received, and for breach of trust.

where an essential element of the plaintiff's cause of action, which is disclosed upon the face of the complaint, is a controversy as to the construction of a right or immunity created by the Constitution or laws of the United States. Gully v. First National Bank, 1936, 299 U.S. 109, 112–114, 57 S.Ct. 96, 81 L.Ed. 70. Since these causes of action are based on state-created rights for money had and received and for breach of trust, no rights or immunities created by the Constitution or Congressional statutes are essential elements of the cause of action and the fact that such rights or immunities are "lurking in the background" (Gully case, 299 U.S. at page 117, 57 S.Ct. at page 100) is not sufficient to make 28 U.S.C.A. § 1331 applicable. See Driscoll v. Burlington-Bristol Bridge Co., D.C. D.N.J.1949, 82 F.Supp. 975. Furthermore, no such right or immunity is created by an act of Congress consenting to a compact between states.[14] The framers of the Constitution apparently envisioned Congressional consent to such a compact as a stamp of approval that such an arrangement would not fall within the class of a prohibited "treaty, alliance or confederation,"[15] and also as a national, legal control over affairs that are projected beyond state lines and yet may not call for, nor be capable of, national treatment.[16]

14. Though cases such as Delaware River Toll Bridge Commission, Pennsylvania-New Jersey v. Colburn, 1940, 310 U.S. 419, 427, 60 S.Ct. 1039, 84 L.Ed. 1287, and State ex rel. Dyer v. Sims, 1951, 341 U.S. 22, 71 S.Ct. 557, 95 L.Ed. 713, hold that the continuation of a compact may involve a "federal 'title, right, privilege or immunity' which when 'specially set up and claimed' in a state court" may be reviewed by the Supreme Court on certiorari under 28 U.S.C.A. § 1257(3), there is not necessarily a federal question for the purposes of original jurisdiction of the Federal District Court under 28 U.S.C.A. § 1331. See Hinderlider v. La Plata, etc., Co., 1938, 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed. 1202; People of State of New York v. Central Railroad, Co., 1870, 12 Wall. 455, 79 U.S. 455, 20 L.Ed. 458, and Jordine v. Walling, 3 Cir., 1950, 185 F.2d 662. But cf. Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834. The fact that a state court proceeding (such as that referred to in footnote 22 below) may be reviewed by the United States Supreme Court after the state courts have declared their policy in the matter is a further reason for nonapplication of Section 1331 in this case. See footnote 16 below.

15. Article I, Section 10, of the Constitution states that: "No State shall, without the Consent of Congress, * * * enter into any Agreement or Compact with another State, * * *."

16. See the "Compact Clause of the Constitution—A Study in Interstate Adjustments," by Felix Frankfurter and James M. Landis, 34 Yale Law Journal 685, 692–5 (1924–5), and 27 Temple Law Quarterly 320, 324–5 (1953–4). The Compact Clause has its roots deep in colonial history. It is an outgrowth of the joint commissions that negotiated the boundary disputes between the colonies. The framers of the Constitution contemplated that the states would adjust their difficulties amicably, without involving the National Government in embarrassing political entanglements. In a similar situation, the court said, International Bridge Co. v. People of State of New York, 1930, 254 U.S. 126, 133, 41 S.Ct. 56, 59, 65 L.Ed. 176:

"The Act does not make Congress the source of the right to build but assumes that the right comes from another source, that is, the State. It merely subjects the right supposed to have been obtained from there to the further condition of getting from Congress consent to action upon the grant."

As early as 1838, the United States Supreme Court recognized that the policy of the states which were parties to the contract was involved once Congress has consented to the compact. See State of Rhode Island v. Commonwealth of Massachusetts, 1838, 12 Pet. 657, 724, 37 U.S. 657, 724, 9 L.Ed. 1233, where the court said:

"If congress consented, then the states were in this respect restored to their original inherent sovereignty; such consent being the sole limitation imposed by the constitution, when given, left the states as they were before, as held by this court in Poole v. Fleeger, 11 Pet. 185, 209, 9 L.Ed. 680; whereby their compacts became of binding force, and finally settled the boundary between them; operating with the same effect as a treaty between sovereign powers."

Though the state laws creating the compact must be consistent with the Constitution and existing federal law, the consent of Congress to the compact is only evidence to prove the statute valid, and a suit such as this for money had and received, and for a breach of trust, is based on state law. See Gully v. First National Bank, supra.[17]

Also, there is nothing in the other statutes relied on by plaintiff (see footnote 13 above) constituting an essential element of these causes of action. Such acts would not prevent plaintiff from raising the tolls [18] in order to enable it to pay salaries to its commission members, as long as such tolls are reasonable and produce sufficient revenue to cover the requirements contained in the terms of these statutes.[19] Furthermore, such acts create rights enforcible by the Federal Government and not by a corporation in an action such as this.[20]

Hence, this case is not one that "arises" under these "laws of the United States." See Driscoll v. Burlington-Bristol Bridge Co., supra.[21]

In addition to the authorities cited above, the conclusions reached under I and II above are supported by able opinions of this District Court and of the District Court for New Jersey, which have been of substantial assistance in the decision of this case. See opinion of Judge Fee filed 10/28/49 in Bowyer v. Delaware River Joint Toll Bridge Commission (Civil Action No. 9706 in this court) and opinion of Judge Smith in Delaware River Joint Toll Bridge Com-

---

As recently as the Dyer case, supra, that court pointed out 341 U.S. at page 28, 71 S.Ct. at page 560:

"Of course every deference will be shown to what the highest court of a State deems to be the law and policy of its State, * * *."

17. In the Gully case [299 U.S. 109, 57 S. Ct. 99], the court emphasized that in determining the existence or non-existence of a federal right or immunity " 'the federal nature of the right to be established is decisive * * *.' "

18. The authorization to fix and charge tolls for transit over plaintiff's bridges is vested in the plaintiff "until changed by" the Secretary of the Army. Act May 1, 1936, 49 Stat. 1252; 33 U.S.C.A. § 526.

19. The budget of plaintiff, which operates, maintains and repairs at least 21 bridges, see Bartron v. Delaware River Joint Toll Bridge Commission, D.C.D.N.J.1954, 120 F.Supp. 337, 342, affirmed 3 Cir., 1954, 216 F.2d 717, can clearly not be substantially affected by the payment of $95,366.67 salaries (paragraphs 4 and 13 of complaint) over a period of over 9 years to defendant commissioners. For this reason, any increase in tolls to cover such payments could hardly affect the reasonableness of the tolls. Cf. Matters v. Ryan, 1919, 249 U.S. 375, 377, 39 S.Ct. 315, 63 L.Ed. 654.

20. Though under the supremacy clause, the laws of Congress are part of the law of the land, fully applicable within the borders of the state, the extent and conditions of any such liability as is involved here is a matter of local law. See, for example, Jacobson v. New York, N. H. & H. R. Co., 1 Cir., 1953, 206 F. 2d 153, 157, 158, affirmed 1954, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067, Gully v. First National Bank, supra.

21. In the Driscoll case, supra, 82 F.Supp. at pages 992–995, the provisions, construction, and effect of federal statutes authorizing acquisition and determination of purchase price were found to furnish no essential element or determine the basic issue of whether there was a fraudulent and illegal organization of the Bridge Commission. The court held that "resort to the necessity for an interpretation of the federal acts can only come collaterally to the real and substantial issues provoked by the complaint which are entirely aside from the federal acts or their interpretations," and concluded that "we find no such right or immunity created by the federal acts as an essential element of the cause of action nor would it rise or fall as effect is given to those federal acts. Such effect as may be given to them at most will be evidentiary on the real and substantial issues which revolve around charges entirely cognizable under the state jurisdiction." The United States Court of Appeals for the Third Circuit has recognized, apparently with approval, that this decision held that there was "any substantial issue controlled by federal law" involved in this proceeding. See Nongard v. Burlington County Bridge Comm., 3 Cir., 1956, 229 F.2d 622, 625 (footnote 1).

mission v. Stults, D.C.D.N.J., 146 F. Supp. 241.

In view of the conclusions reached, it is not necessary to consider defendants' contention that this court should delay any further proceedings in this case until a suit pending in a Pennsylvania court [22] proceeds to decision, clarifying the questions of state public policy involved in this case.[23]

#### Order

And now, December 28, 1956, it is ordered that this action be dismissed, with prejudice, for lack of jurisdiction over the subject matter.

---

22. Carver v. Delaware River Joint Toll Bridge Commission, Commonwealth Docket No. 170 of 1956 in Common Pleas Court of Dauphin County.

23. See Heller v. Kreider, 3 Cir., 1938, 98 F.2d 106, 107; B. J. Van Ingen & Co. v. Burlington County Bridge Commission, D.C.D.N.J.1949, 83 F.Supp. 778, 782–786; and cases cited in those opinions.