Per Curiam.

A condemnation proceeding brought pursuant to the Port Development Project Law (L. 1962, ch. 209; Laws of N. J., 1962, ch. 8) was approved in this court in the case of Courtesy Sandwich Shop v. Port of N. Y. Auth. (12 N Y 2d 379 [1963]). The statute under which the Authority brought this proceeding was found to be constitutional because there was no showing at that time that the Authority was deviating from the authorized purposes mandated by the statute’s terms. The appellants in this condemnation proceeding contend that the steps which the Authority has taken to implement the provisions of the statute to bring the trade center into reality deviated from the concept and authorized purposes set out in the statute.
There is no evidence in the record which indicates that the purposes or the provisions under which the Authority was given full discretionary power as to how best carry out the project to its successful fruition are being subverted by the Authority.
The operations and subsequent proposals of the Authority since the decision of the Courtesy case (supra) are consistent with the primary purposes mandated by the legislation under which it has acted.
In the Courtesy case the court had before it a preliminary schedule of space allocations. The schedule indicated that the project was planned so as to satisfy the constitutional interpretation which we assigned to it in accordance with the definition in the statute. That schedule does not differ substantially from the plan before us in this case which sets out the allocation of space in the present planned project.
An analysis of the record points to the single conclusion that the project which is under way under the direction of the Authority is fully authorized by the statute and that the real property being condemned in the present proceedings is being taken for an authorized public purpose. The World Trade tenants will include customs brokers, freight forwarders, carriers, banks, insurers and similar services; customs and other governmental services and offices; World Trade information and promotion services; Commodity Exchange and export-import exhibit and *254 offices. Tliese tenants will occupy a total of 5,910,000 square feet of space. The State of New York and Port Authority offices will take up 2,345,000 square feet of space and the remainder of the space, 1,895,000 square feet, is devoted to the service facilities,-such as parking and storage areas, hotels and meeting room facilities, restaurants, newsstands, bank branches and other facilities to either serve the business and commercial needs of the firms that locate in the center themselves, or to serve the needs of the people who will be working for the tenants. The letters of intent of the prospective tenants for space as World Trade Center tenants satisfy the requirements of the statute. The eligibility of the occupancy by the State of New York and the Authority itself is specifically covered by section 2 which makes a distinction between governmental services related to the World Trade functions, activities and services and other governmental services. Furthermore, agreements between the Authority and the States of New York and New Jersey are specifically authorized under the statute. Section 7 gives the Authority power to make such agreements, and under section 8 the corresponding power is given to the States. The tenancy of the State of New York appears to be fully within the contemplation of the Legislatures as an accommodation of other governmental services set out in the statute; and the housing of the Port Authority, a bi-State governmental agency, also qualifies under this category. The Port Authority should also be considered eligible on the ground that the Port Authority is itself engaged in a World Trade function in that it maintains the Port of New York and has a very substantial role to play in ensuring an improvement in World Trade in the Port of New York which embraces a region in which New Jersey and New York have a major interest. Approximately two thirds of the space within the center is planned for the use of tenants directly involved in World Trade purposes; approximately one sixth is allocated to space devoted to governmental tenants and the remainder, approximately one sixth, to be used for support and service purposes. The service facilities are very much a part of a well-planned World Trade facility which the statute has authorized, and there is no doubt that it is within the Authority’s authority in carrying out the directives of the statute that this trade center be established.
*255 Allegations that the plan is doomed to failure were raised in the Courtesy ease (supra) and we there rejected them. They have no greater merit at this time. The Authority has been delegated a task by the Legislatures. Its methods are not reviewable in a court of law as to whether or not they will ultimately succeed. (City of Mount Vernon v. East Hudson Parkway Auth., 45 Misc 2d 471 [Sup. Ct., Westchester County, 1965], affd. 23 A D 2d 849 [2d Dept., 1965], mot. for lv. to app. den. 16 N Y 2d 483 [1965]; see, also, L. 1962, ch. 209; Laws of N. J., 1962, ch. 8.) The question raised concerning the Authority’s ultimate success or failure is mere speculation and is no more than a challenge to the efficacy of the project itself. These, as well as all the other contentions made, do not raise any factual or justiciable issues.
Special Term properly granted summary judgment on the Authority’s motion, hiere the answers to interrogatories filed in the earlier action have been made a part of the record before the court. The standards of summary judgment applied, to actions should also be applied by the court to proceedings governed by CPLE 409 (subd. [b]). These standards were properly applied by the Judge at Special Term, and, since there are no substantial questions of fact 'in the case, he correctly granted summary judgment for the Authority on the merits of the legal questions.
The order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.