**PORT AUTHORITY BONDHOLDERS PROTECTIVE COMMITTEE, Henry W. Klein, and Alvin S. Lane, Plaintiffs,**

v.

**PORT OF NEW YORK AUTHORITY, Defendant.**

No. 67 Civ. 1667.

United States District Court
S. D. New York.

July 7, 1967.

O'Dwyer & Bernstien, New York City, by Paul O'Dwyer, and Howard N. Meyer, New York City, for plaintiffs.

Sidney Goldstein, New York City, Joseph Lesser, Isobel E. Muirhead, Arthur M. Schneider, John P. Howland, New York City, on the brief, for defendant.

## OPINION

TYLER, District Judge.

In this non-diversity action, plaintiffs, bondholders of the defendant Port of New York Authority ("Port Authority") sue, in their own behalf and for all bondholders similarly situated, for breach of contract and seek declaratory judgment and injunctive relief.[1] Defendant moves to dismiss for lack of subject-matter jurisdiction.

The facts relevant to the disposition of this motion are relatively uncomplicated. In 1921, New York and New Jersey entered into a compact under which the Port Authority was formed and was authorized to purchase, construct, lease and operate "any terminal or transportation facility" and "for any of such purposes to own, hold, lease, and/or operate real and personal property." L. 1921, ch. 154, § 1, art. VI, McK.Unconsol. Laws § 6407. The compact was duly approved by Congress (42 Stat. 174) as required by the United States Constitution, Article I, Section 10.[2]

In 1962, the legislatures of New York and New Jersey passed concurrent legislation under which the Port Authority was authorized to construct a "World Trade Center" in Manhattan. This legislation was not submitted for approval nor was it approved by Congress.

As indicated above, plaintiffs hold bonds issued by the Port Authority. As holders of the bonds, they are protected by various covenants made by the Authority.[3] One such covenant is that that body will

"fully and faithfully * * * perform all duties required by the Constitutions and Statutes of the United States and of the States of New York and New Jersey, and by the Compact of April 30, 1921, between said two States with reference to all facilities the net revenues of which are pledged as security for Consolidated Bonds,—those hereafter established, constructed or acquired by it, as well as those presently owned, leased or operated by it." (Consolidated Bond Resolution (Adopted Oct. 9, 1952), Section 12 (a)).

At the present time, interest on the bonds is exempt from federal income taxes. General Counsel and Bond Counsel for the Authority have specifically stated that "such interest is, under the existing Acts of Congress, exempt from present Federal income taxes * * *." "Tax Exemption", Official Statement— The Port of New York Authority, March 22, 1967, p. 25.

Jurisdiction of this court, which defendants contest by this motion, is said to be based upon several grounds, three of which should be discussed with some specificity.

1. Paragraph (b) of the "Whereas" clause of the complaint prays judgment

"mandating specific performance of the obligations of the defendants under its covenants and agreements with its bondholders and directing the defendant to formulate and submit to the Court or a Special Master * * * a new plan for a reasonable World Trade Center that will be in conformity with its said covenants."

It is questionable whether this court has the power to grant such relief even if the jurisdictional issues discussed in this memorandum are resolved in plaintiffs'

favor. See Wolkstein v. Port of N. Y. Authority, 178 F.Supp. 209, 213–214 (D. N.J.1959).

2. Article I, Section 10, Clause 3, of the Constitution provides that "no State shall, without the Consent of Congress, * * * enter into any Agreement or Compact with another State * * *."

3. The covenants are set forth in Section 12 of the Authority's Consolidated Bond Resolution. See Appendix V, Official Statement—The Port of New York Authority, March 22, 1967.

## I.

First, plaintiffs maintain that because this is an action involving the construction of an interstate compact which has been consented to by Congress pursuant to the Constitution, this court has jurisdiction over the controversy pursuant to 28 U.S.C. § 1331(a). To support this proposition, they cite Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), in which the majority of the Supreme Court and the dissent agreed that the construction of a compact gives rise to a "federal question". 359 U.S. at 278 and 285, 79 S.Ct. 785. Both the majority and dissenting opinions relied upon Delaware River Joint Toll Bridge Comm'n v. Colburn, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940), to support this proposition.

I cannot agree with plaintiffs. Neither the *Petty* nor the *Colburn* cases had a procedural stance similar to that of the case at bar. In *Petty,* suit was brought in the District Court for the Eastern District of Missouri under the Jones Act, 46 U.S.C. § 688. Accordingly, the issue of whether or not a federal district court had original jurisdiction over the controversy solely on the basis of the presence of a question involving the construction of a compact was not before the court.

The *Colburn* case can be properly distinguished on a similar rationale. That case came before the Supreme Court on certiorari from the highest court of New Jersey. Thus, as in *Petty,* the Supreme Court did not have before it an issue relating to the original jurisdiction of the federal district courts.

Counsel have not supplied and I have not found any Supreme Court or Circuit Court of Appeals decision which deals directly with the instant issue. As at least one commentator has noted, however, there is authority at the district court level that the "district courts will not hear compact questions under their

federal question jurisdiction." Engdahl, *Construction of Interstate Compacts: A Questionable Federal Question, 51 Va. L.Rev.* 987, 988 (1965). For example, in Rivoli Trucking Corp. v. American Export Lines, Inc., 167 F.Supp. 937 (E.D. N.Y.1958), Judge Zavatt stated that "neither the [Waterfront Commission] Compact between the States of New York and New Jersey nor the Act of Congress consenting thereto are laws or treaties of the United States within the meaning of 28 U.S.C. § 1331." 167 F.Supp. at 939 (citations omitted). The same result was reached in Delaware River Joint Toll Bridge Comm'n v. Stults, 146 F.Supp. 241 (D.N.J.1956). The compact there involved was between New Jersey and Pennsylvania. Plaintiff invoked the jurisdiction of the district court on the ground that the matter in controversy arose under the Acts of Congress approving the compact and amendments thereto. The court analyzed the complaint and concluded that the action was "the ordinary action in assumpsit for money had and received in which the local law is determinative of both the rights of the plaintiff and the liability of the defendants. There is obviously no federal question." 146 F. Supp. at 242. In the present case, this conclusion can be properly applied to all but one of the allegations of breach of covenant involved herein since the merits of such allegations must be determined in terms of state contract law.[4]

The final case to be considered in this area is Delaware River Joint Toll Bridge Comm'n v. Miller, 147 F.Supp. 270 (E.D.Pa.1956). The plaintiff commission sued the two defendants, members of the commission, for the recovery of amounts alleged to have been paid to each defendant as salaries without legal authority. Plaintiff contended that the federal district court had original jurisdiction because the case arose under the Constitution or laws of the United States as those terms are used in 28 U.S.C.

---

4. The exception is the covenant set forth in Section 12(a) of the Consolidated Bond Resolution, set forth *supra.* The

problems raised by this covenant will be treated separately in Section II, *infra.*

§ 1331. Judge Van Dusen noted that plaintiffs' two causes of action were based on state-created rights and stated specifically that no federal "right or immunity is created by an act of Congress consenting to a compact between states." 147 F.Supp. at 274. In a footnote, he explicitly distinguished the *Colburn* case on the ground that what is a "federal question" for purposes of certiorari is not necessarily a "federal question" for purposes of the original jurisdiction of the federal district courts under 28 U.S.C. § 1331. 147 F.Supp. at 274 n. 14. Such reasoning seems sound, and I do not believe that it was in any way rendered invalid by the 1959 Supreme Court decision in Petty v. Tennessee-Missouri Bridge Comm'n, supra, since, as stated before, the Supreme Court was not there considering in any way an issue relating to the original jurisdiction of the district courts.

## II.

In addition to maintaining that this court has original jurisdiction of this case solely because an interstate compact is involved, plaintiffs make the more specific contention that there is jurisdiction based upon the allegation that defendant has breached its covenant to fully and faithfully perform all duties required by the Constitution and Statutes of the United States by undertaking the development of the World Trade Center without specific approval from Congress.[5] The legal theory espoused by plaintiffs here is that the trade center was not authorized by the terms of the original compact and that, therefore, the agreement to build the center must receive the approval of Congress if there is to be compliance with the constitutional mandate that "no State shall, without the Consent of Congress, * * * enter into any Agreement or Compact with another State * * *." U.S.Const. art. I, § 10. Plaintiffs maintain that this raises a federal question and that thus this court has ancillary jurisdiction over all other elements of this action, regardless of whether they themselves raise a federal question.

■ Allegation of a breach of this covenant does not automatically require a conclusion that this court has original jurisdiction. It is hornbook law that there is no jurisdiction when the claim upon which jurisdiction is said to rest is "plainly insubstantial". Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933); see Wright, Federal Courts § 19, at 57, and § 50, at 165 (1963). One of the tests for insubstantiality is that the claim's "unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." Levering & Garrigues Co. v. Morrin, supra, at 105–106, 53 S.Ct. at 550.

■ In my view, defendant here can make a showing of insubstantiality through an application of this test. In Courtesy Sandwich Shop, Inc. v. Port of N. Y. Authority, 12 N.Y.2d 379, 240 N.Y. S.2d 1, 190 N.E.2d 402 (1963), the New York Court of Appeals specifically considered the claim made in this case, i. e., that the legislation authorizing the World Trade Center "is unconstitutional (under the compact clause, U.S.Const. art. I, § 10) because no additional congressional consent has been obtained for this bi-State legislation." 12 N.Y.2d at 391, 240 N.Y.S.2d at 7, 190 N.E.2d at 406. The court held that "this argument must fail because * * * [the New York enabling legislation] clearly falls within the congressional consent given to the articles contemplating the grant to the Port Authority of additional powers within the framework of the compact." *Ibid.*

■ Plaintiffs in *Courtesy Sandwich Shop* appealed to the Supreme Court. In a short *per curiam* opinion, the appeal was dismissed "for want of a substantial federal question". Courtesy Sandwich Shop, Inc. v. Port of N. Y. Authority, 375 U.S. 78, 84 S.Ct. 194, 11 L.Ed.

5. This covenant is set out at p. 948 of this opinion.

2d 141, rehearing denied, 375 U.S. 960, 84 S.Ct. 440, 11 L.Ed.2d 318 (1963). Such a dismissal amounts to an affirmance of the case on the merits. Ohio *ex rel.* Eaton v. Price, 360 U.S. 246, 247, 79 S.Ct. 978, 3 L.Ed.2d 1200 (1959) separate memorandum of Brennan, J.); Wright, Federal Courts § 108, at 431. Accordingly, I hold that the claim made by plaintiffs has been foreclosed by the Supreme Court and is thus "plainly insubstantial" for purposes of federal question jurisdiction. In so doing, I specifically reject the arguments made by plaintiffs in regard to this point. The basic reasons for this rejection are set forth in some detail *infra*.

Plaintiffs contend that it is not clear whether the *Courtesy Sandwich Shop* decision was on the merits because one of the issues in that case was whether or not plaintiffs had sufficient standing to maintain the suit. Such an argument must fail in light of the uncontroverted authority that a dismissal for want of a federal question goes to the merits. From this, it must follow that the Supreme Court resolved the threshold question of standing in favor of the plaintiffs.

Plaintiffs further argue that the ruling of the Supreme Court in the *Courtesy Sandwich Shop* has no binding impact upon the instant case because the World Trade Center involved in the 1962 litigation was "reasonable" whereas the one presently in question is "unreasonable". In other words, plaintiffs are apparently arguing that because of changes in the plans of the center since 1962, there has been no Supreme Court determination whether or not additional Congressional consent must be obtained before the presently "unreasonable" center can be legally constructed.

Such a contention falls short of the mark. Preliminarily, it should be noted

that in fact the present plans for the center do not appear to differ substantially from the original ones considered in the *Courtesy Sandwich Shop* case.[6] More important, however, it is difficult to see how the question of "reasonableness" can be a factor in determining whether specific congressional consent is required for the construction of a "world trade center" by the New York Port Authority. The only issue is whether the terms of the original compact, duly approved by Congress, permit, in general, the development of a center. Questions as to reasonableness arise only in relation to the specific aspects of the center and are therefore not relevant to the issue of "federal question" jurisdiction.

### III.

Plaintiffs further allege that defendant, having agreed that it would not do, cause or suffer to be done any act impairing the immunity of the bonds involved herein from federal income taxes, nevertheless has embarked upon and threatens to proceed with a course of action that "jeopardizes, puts into question, and may result in loss of the benefit of the tax immunity under the Constitution of the United States in reliance on which the plaintiffs and all bondholders similarly situated acquired their said * * * bonds." Complaint, para. 8. Accordingly, plaintiffs pray for judgment "declaring that the present plan and program of the defendant to construct a so-called World Trade Center * * * endangers the tax immunity of its Consolidated Bonds."

Plaintiffs argue that this claim gives this court jurisdiction since the pleadings involve the internal revenue statutes which, for the purposes of 28 U.S.C. § 1331, are laws of the United States.

This particular theory of plaintiffs is fraught with difficulties. To begin with,

---

6. In Port of N. Y. Authority v. 62 Cortlandt St. Realty Co., 18 N.Y.2d 250, 273 N.Y.S.2d 337, 219 N.E.2d 797 (1966), cert. denied, sub nom. McInnes v. Port of New York Authority, 385 U.S. 1006, 87 S. Ct. 712, 17 L.Ed.2d 544 (1967), the New York Court of Appeals stated that the preliminary schedule of space allocations involved in *Courtesy Sandwich Shop* "does not differ substantially from the plan before us in this case which sets out the allocation of space in the present planned project." 18 N.Y.2d at 253, 273 N.Y.S.2d at 338, 219 N.E.2d at 798.

no one has called to this court's attention an express covenant by the Port Authority that it will not endanger plaintiffs' tax immunity. But plaintiffs maintain that such a covenant or agreement must be found on the theory that because of the representation made by defendant's counsel in the Authority's Official Statement of March 22, 1967 that such an immunity does exist, the law will imply an agreement by each party to refrain from doing anything that will destroy or injure plaintiffs' right to continue to receive the immunity in the future. See Stern & Co. v. State Loan & Finance Corp., 238 F.Supp. 901, 915–916 (D.Del. 1965) (Pennsylvania law applied). Since defendant does not refute or attack this theory in its memoranda, it will be accepted as viable for purposes of the following discussion.

By way of background to an analysis of this branch of the case, it should be stated that, up to the present time, Port Authority bondholders have not had to pay any federal taxes on the interest received from the bonds. See 26 U.S.C. § 103(a) (1). Such immunity derives from the Authority's status as a governmental agency. Plaintiffs assert that effectuation of the World Trade Center will impair the immunity by placing the Authority in the New York City commercial real estate market "in direct competition with existing private enterprise". Plaintiffs conclude that this "will thereby render the income from its obligations subject to federal taxation on the same basis as other real estate bonds and mortgages." Complaint, para. 9(a). In short, plaintiffs reason that the revenue will amount to "income from unrelated trade or business" (see 26 U.S.C. §§ 512, 513) and thus will be taxable.

This reasoning omits an important step. Even if, and I have very serious doubts as to this, the income derived by the Authority from some aspects of the World Trade Center were deemed to be unrelated to exempted trade or business and therefore taxable, this does not mean that the income on the bonds would be taxable. Treatment of the income of the Authority and of the bondholders must be considered separately. In this context, the rule proposed by the Internal Revenue Service which would tax the advertising profits of certain publications which are presently exempted has no readily apparent bearing upon the case at bar.[7]

In fact, an examination of the record before me reveals that there is no "case of actual controversy" relating to the tax immunity herein involved which can be adjudicated by this court pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. Plaintiffs can make no showing of any actual threat to this immunity. There has been no concrete indication from any source that the immunity is threatened. The legal theories urged by plaintiffs provide no reasonable basis for any inference that a threat might be forthcoming. Finally, I have serious doubts whether the presence of a "threat" would warrant use of the declaratory judgment statute. Accordingly, those portions of the complaint relating to the tax issue must be dismissed for lack of jurisdiction.

Because of this disposition, I need not deal with the other problems presented by this claim, e. g., whether the claim presents a primary "federal question" (see Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Wright, Federal Courts § 17) or whether the claim can be decided under the Declaratory Judgment Act since it arises "in respect to Federal taxes" (see 28 U.S.C. § 2201, Stern & Co. v. State Loan and Finance Corp., 205 F.Supp. 702 (D.Del.1962)).

IV.

I have examined the other bases which plaintiffs assert give this court jurisdiction under 28 U.S.C. § 1331, and I find them to be without substance.

7. For the specific provisions of this proposal, see IRS Proposed Rule Making, "Treatment of Income from Unrelated Trade or Business", 32 Fed.Reg. 5993 (April 14, 1967).

In light of the foregoing conclusions, I do not reach the question whether the requisite jurisdictional amount of $10,000 is involved.

Defendant's motion to dismiss is granted. It is so ordered.