PORT AUTHORITY BONDHOLDERS PROTECTIVE COMMITTEE, Henry W. Klein, Alvin S. Lane, Adele W. Ginsberg and Morris L. Lewy, Plaintiffs-Appellants,

v.

PORT OF NEW YORK AUTHORITY,
Defendant-Appellee.

No. 149, Docket 31611.

United States Court of Appeals
Second Circuit.

Argued Oct. 27, 1967.

Decided Nov. 17, 1967.

Howard N. Meyer, New York City (O'Dwyer & Bernstien, New York City, Paul O'Dwyer, New York City, of counsel), for plaintiffs-appellants.

Joseph Lesser, New York City (Sidney Goldstein, New York City) (Isobel E. Muirhead, Arthur M. Schneider, New York City, on the brief), for defendant-appellee.

Before FRIENDLY, KAUFMAN and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge:

The complaint in this action in the District Court for the Southern District of New York was filed by two persons owning together $25,000 of bonds issued by the Port of New York Authority under a Consolidated Bond Resolution dated October 9, 1952. While the complaint stated that they had "united in behalf of themselves individually and of all bondholders similarly situated to act as a Committee for the protection of their rights, the enforcement of defendant's obligations, and to prevent the impending dilution of the security for defendant's obligations and the threatened impairment of defendant's ability to perform same," plaintiffs made no application for an order under F.R.Civ.P. 23(c) (1) determining that the suit might be maintained as a class action. Later two other persons, claiming to own $45,000 of Port Authority bonds, served a notice that they desired to be added as plaintiffs. The complaint alleged that the Authority's proposed construction of a World Trade Center would violate various covenants in the Bond Resolution to comply with the Constitution and statutes of the United States, the statutes of New York and New Jersey, the compact between the two states pursuant to which the Authority was formed, and the Congressional consent thereto, and would jeopardize the immunity of its bonds from federal income tax.

The Authority moved to dismiss on the ground that the complaint did not assert either diversity of citizenship, as is conceded, or a federal question. Judge Tyler held that the complaint stated no

question which "arises under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and it was therefore unnecessary to consider jurisdictional amount.

We need not debate whether a complaint alleging that an authority created under an interstate compact had breached a covenant to operate only within the terms of the consent given by Congress fails to state a question arising under the Constitution or laws of the United States because the contract has "its genesis" in state law, Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 114, 57 S.Ct. 96, 81 L.Ed. 70 (1936), or, as we have intimated, would be sufficient since, as we think would be the case here, "federal principles control the disposition of the claim." T. B. Harms Co. v. Eliscu, 339 F.2d 823, 828 (2 Cir. 1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); McFaddin Express, Inc. v. Adley Corp., 346 F.2d 424, 426–427 (2 Cir. 1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966). For, with the benevolence appropriate on a motion to dismiss, we can read the complaint as raising directly, and apart from the covenants of the Bond Resolution, the issue whether the concurrent statutes of New York and New Jersey, N.Y.Laws c. 209 (1962), N.J. Laws c. 8 (1962), pursuant to which the Port Authority is constructing the World Trade Center, are within the terms of the consent given by Congress to the original compact in 1921 and, if not, whether Congressional consent to them is required by the Compact Clause of the Constitution, Art. I, § 10. Although Art. 7 of the Congressional Joint Resolution, 42 Stat. 177 (1921), consenting to the compact, provided that "[t]he port authority shall have such additional powers and duties as may hereafter be delegated to or imposed upon it from time to time by the action of the legislature of either State concurred in by the legislature of the other", the plaintiffs argue that this grant should be read as limited to the general purpose of the Authority, defined in Art. 6—"to purchase, construct, lease, and/or operate any terminal or transportation facility within said district"—and allege that the Trade Center is not a "terminal or transportation facility" but "a grandiose design that bears no rational connection with the needs of a reasonable or genuine 'World Trade Center,'" providing "rentable space far in excess of what is required for genuine or reasonable World Trade Center purposes."

■ In order to conclude, as we do, that this contention raises a federal question, we are not required to accept plaintiffs' argument that the decision in Delaware River Joint Toll Bridge Comm'n Pennsylvania-New Jersey v. Colburn, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940), overruling People v. Central R. R. Co. of New Jersey, 79 U.S. (12 Wall.) 455, 20 L.Ed. 458 (1872), that a claim as to the interpretation of a Congressionally approved compact invokes a "title, right, privilege or immunity * * * specially set up or claimed" under the Constitution or statutes of the United States, within 28 U.S.C. § 1257(3), necessarily means that such a claim also "arises under" the Constitution and laws of the United States within 28 U.S.C. § 1331.[1] On any view a claim that a bi-state authority is taking action without having received the consent of Congress required by the Compact Clause of the Constitution so "arises." Compare State of Montana ex rel. Haire v. Rice, 204 U.S. 291, 27 S.Ct. 281, 51 L.Ed. 490 (1907);

---

1. Delaware River Joint Toll Bridge Comm'n v. Miller, 147 F.Supp. 270 (E.D. Pa.1956) (Van Dusen, J.) and Rivoli Trucking Corp. v. American Export Lines, Inc., 167 F.Supp. 937 (E.D.N.Y.1958), have held that it does not. However, the author of an able commentary persuasively argues that the only apparent rationale of the *Colburn* case, which he regards as wrongly decided, and the explicit statement of the majority in Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 278–279, 79 S.Ct. 785, 3 L.Ed. 2d 804 (1959), call for an opposite result. Engdahl, Construction of Compacts: A Questionable Federal Question, 51 Va.L. Rev. 987, 1025 (1965).

and see Engdahl, supra, 51 Va.L.Rev. at 1027.[2]

■ Plaintiffs' difficulty thus does not lie in failure to allege a federal question but in inability to meet the further test that the claim must not be plainly unsubstantial, Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105–106, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933). The Court there went on to say "And the federal question averred may be plainly unsubstantial either because obviously without merit, or 'because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy',"—the quotation being from Hannis Distilling Co. v. City of Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482 (1910). It would be inappropriate for us to make an independent examination of the substantiality of the questions here presented since the Supreme Court has considered them not simply in a similar case but in a substantially identical one. The compact clause argument was one of the many advanced by prospective condemnees in an action in the New York courts for a declaration that the statutes authorizing construction of the World Trade Center were unconstitutional; and, after the New York Court of Appeals had ruled against the plaintiffs, Courtesy Sandwich Shop v. Port of New York Authority, 12 N.Y.2d 379, 240 N.Y.S.2d 1, 190 N.E.2d 402 (1963), the Supreme Court dismissed an appeal "for want of a substantial federal question." 375 U.S. 78, 84 S.Ct. 194, 11 L.Ed. 2d 141 (1963).

It is true that the majority opinion of the Court of Appeals was principally devoted to the issue of public purpose, on which the Appellate Division had ruled adversely to the Port Authority, Courtesy Sandwich Shop, Inc. v. Port of New York Authority, 17 A.D.2d 590, 237 N.Y. S.2d 820 (1st Dep't, 1963), and treated the scope of consent in cursory fashion, 12 N.Y.2d at 391, 240 N.Y.S.2d at 7. However, Judge Van Voorhis made the issue one of the bases for his dissent, 12 N.Y.2d at 399–400, 240 N.Y.S.2d at 14–15, and the point was presented to the Supreme Court, perhaps not very forcefully but sufficiently, in appellants' Jurisdictional Statement, pp. 16–22, the Port Authority's motion to dismiss, pp. 18–24, and appellants' answering brief, pp. 2–5. While the instant plaintiffs say the Supreme Court was not made aware in *Courtesy Sandwich Shop* how far the World Trade Center departed from the concept of a "terminal or transportation facility," the appellants' answering brief on the motion to dismiss in that case referred to it as "a monster real estate project" which "obviously exceeded the contemplation of Congress in 1921 and 1922," p. 2. See also Port of New York Authority v. 62 Cortlandt St. Realty Co., 18 N.Y.2d 250, 253, 273 N.Y.S.2d 337, 338, 219 N.E.2d 797 (1966), cert. denied, McInnes v. Port of New York Authority, 385 U.S. 1006, 87 S.Ct. 712, 17 L.Ed.2d 544 (1967).

■ We thus see no escape from the conclusion that the Supreme Court has labeled as unsubstantial the very question which constitutes plaintiffs' most likely basis for asserting federal question jurisdiction.[3] Examination of the com-

2. This is true even if, as urged by Engdahl, supra, 51 Va.L.Rev. at 1028, the statement in People v. Central R.R., supra, that "the assent of Congress did not make the act giving it a statute of the United States, in the sense of the 25th section of the Judiciary Act" escaped the overruling in *Colburn*; whether states are acting beyond the scope of Congress' consent is a question arising under the Constitution.

3. We recognize the possible force in an argument that in light of the heavy demands on the Supreme Court's time, see Hart, The Time Chart of the Justices, 73 Harv.L.Rev. 84 (1959); Bickel, The Least Dangerous Branch 126 (1962); but see Gunther, The Subtle Vices of the "Passive Virtues," 64 Colum.L.Rev. 1, 10–13 (1964), dismissal of an appeal on motion "for want of a substantial federal question" should be considered as having *less* of a foreclosing effect than an adverse decision of the same or even a similar question after full argument. The

plaint discloses no substantial question requiring construction of the supplemental "compact" relating to the World Trade Center made by New York and New Jersey in 1962, even if we should assume *arguendo*, contrary to the few decided cases, see fn. 1, that such a claim would come within 28 U.S.C. § 1331. The claims of violation of the Bond Resolution other than the one we have discussed fail to qualify under the principle of the *Gully* case, supra, 299 U.S. at 115–115, 117–118, 57 S.Ct. 96, 81 L.Ed. 70. Like Judge Tyler we also do not reach the issue of jurisdictional amount.

Affirmed.

Sunday law cases, McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); Gallagher v. Crown Kosher Super Market of Mass. Inc., 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961), are notable examples of the Court's finding much substantiality—there 200 pages worth—in an issue characterized as unsubstantial in dismissing appeals only a few years before, Gundaker Central Motors, Inc. v. Gassert, 354 U.S. 933, 77 S.Ct. 1397, 1 L.Ed.2d 1533 (1957);

Grochowiak v. Com. of Pennsylvania, 358 U.S. 47, 79 S.Ct. 40, 3 L.Ed.2d 44 (1958); Ullner v. State of Ohio, 358 U.S. 131, 79 S.Ct. 230, 3 L.Ed.2d 225 (1958); and Kidd v. State of Ohio, 358 U.S. 132, 79 S.Ct. 235, 3 L.Ed.2d 225 (1958). However, unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise.