**Theodore W. KHEEL et al., Plaintiffs,**

**v.**

**The PORT OF NEW YORK AUTHOR-ITY et al., Defendants.**

**No. 71 Civ. 956.**

United States District Court,
S. D. New York.

July 28, 1971.

Battle, Fowler, Stokes & Kheel by Theodore W. Kheel, Raymond F. Gregory, Lewis B. Kaden, Robert Kheel, Joel M. Walker, Richard Adelman, New York City, for plaintiffs.

Sidney Goldstein, Gen. Counsel, The Port of New York Authority, by Joseph Lesser, New York City, for The Port of New York Authority, its Commissioners and Executive Director.

Louis J. Lefkowitz, Atty. Gen., by Daniel M. Cohen, Asst. Atty. Gen., for Nelson A. Rockefeller, Governor of N. Y.

## OPINION

TYLER, District Judge.

As local residents, citizens, voters, and taxpayers dependent upon mass transportation facilities, plaintiffs seek a declaration pursuant to 28 U.S.C. § 2201[1] that a 1962 amendment to The Port of New York Authority Compact,[2] which restricts the power of the subject bi-state agency to devote its revenues to nonself-supporting rail facilities, is unconstitutional in light of the compact clause, Article I, section 10, clause 3, U. S.C., and the commerce clause, Article I, section 8, clause 3, U.S.C. In addition, plaintiffs argue that the amendment effects a constitutionally impermissible delegation of future legislative authority to provide for mass transit facilities to private persons, the bondholders.

Defendants are The Port of New York Authority ("Port Authority"), its Commissioners and Executive Director, and the Governor of New York State. Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction, 28 U.S.C. § 1331(a), and for failure to state a claim for relief, Rule 12(b) (6), 28 U.S.C:, is the subject of this decision.

The relevant background can be briefly outlined. In 1921, New York and New Jersey entered into a compact creating the Port Authority, one of whose tasks was to develop facilities for the transportation of freight and persons in the Port of New York district. Laws of N.Y. 1921, ch. 154; Laws of N.J. 1921, ch. 151. Congress approved this compact, as required by the compact clause, *supra.* Pub.Res. No. 17, 67th Cong., 1st Sess., 42 Stat. 174 (1922). Subsequently, the two states and the Congress approved the original Comprehensive Plan. Laws of N.Y. 1922, ch. 43; Laws of N. J. 1922, ch. 9; Pub.Res. No. 66, 67th Cong., 2d Sess., 42 Stat. 822 (1922).

Pursuant to the compact requirement that the Port Authority obtain approval from the founding states' legislatures before undertaking additional projects, the legislatures of New York and New Jersey authorized, in 1962, the construction by the Port Authority of the "World Trade Center" and the purchase of the Hudson Tubes. This legislation, which was not submitted for Congressional approval, contained the limiting provision (hereinafter the "transit amendment") at issue, which states in relevant part:

> "The two states covenant and agree with each other and with the holders of [Port Authority] bonds, * * * that so long as any of such bonds remain outstanding and unpaid * * neither the states nor the port authority nor any subsidiary corporation incorporated for any of the purposes of this Act will apply any of the rentals, tolls, fares, fees, charges,

---

1. Additional relief in terms of a mandate to the Port Authority to plan particular mass transportation facilities, sought in the complaint appears to have been abandoned at oral argument, or at least will be deemed so for the purpose of this decision.

2. McKinney's 1962 Session Laws of New York, Vol. I, ch. 209, § 6, at 418.

revenues or reserves, which have been or shall be pledged in whole or in part as security for such bonds, for any railroad purposes whatsoever other than permitted purposes hereinafter set forth." McKinney's 1962 Session Laws of New York, Vol. I, ch. 209, § 6, at 418–419.

"Permitted purposes" include railroad facilities that are either self-supporting or accomplished within specified deficit limits. *Ibid.*

■ Diversity of citizenship being absent, plaintiffs must show that a substantial federal question is directly in issue. 28 U.S.C. § 1331(a). For the reasons stated hereinafter, I hold that plaintiffs have failed in this task and grant defendants' motion to dismiss.

Plaintiffs' major claim to a federal forum arises from the conceded absence of Congressional approval of the transit amendment. Ironically, the same constitutional argument was pressed by the Port Authority bondholders before this very court in an attack upon another provision of the 1962 compact amendments which authorized construction of the "World Trade Center", whose twin towers now dominate the lower Manhattan landscape. Port Authority Bondholders Protective Committee v. Port of New York Authority, 270 F.Supp. 947 (S.D.N.Y.1967), affirmed 387 F.2d 259 (2d Cir.1968). While the decision in *Bondholders* explicitly recognized that a claim of collision with the compact clause "arises under the * * * Constitution" in the terms of the jurisdic-

tional statute, it was held therein that the compact clause question lacked the substantiality requisite to confer jurisdiction because foreclosed by previous decisions in Courtesy Sandwich Shop, Inc. v. Port of New York Authority, 12 N.Y.2d 379, 240 N.Y.S.2d 1, 190 N.E.2d 402, appeal dismissed 375 U.S. 78, 84 S. Ct. 194, 11 L.Ed.2d 141, rehearing denied 375 U.S. 960, 84 S.Ct. 440, 11 L. Ed.2d 318 (1963). *Bondholders, supra,* citing Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105–106, 53 S.Ct. 549, 77 L.Ed. 1062 (1933). Although the transit amendment, here at issue, was not involved in *Bondholders* or its predecessor, I view the disposition in *Courtesy Sandwich Shop* as predominantly a legal one and, therefore, equally controlling of this case.

In *Courtesy Sandwich Shop, supra,* the New York Court of Appeals refused to enjoin condemnation of respondents' properties on the grounds that the "World Trade Center" authorizing legislation violated neither the just compensation nor compact clauses of the federal Constitution. Of necessity, both grounds were decided on the merits. Respecting the compact clause claim, which tracks in form the claim here made, the court held that the requisite consent was contained in the Congressional resolutions approving the original compact and comprehensive plan, since that consent attached to provisions of the bi-state enactments according amendatory power to the two state legislatures acting alone.[3] The appeal to the Su-

3. " * * * assuming consent to be required for this sort of action concurrent, the consent originally given in 1921 and 1922 to the bi-state compact creating the Port Authority expressly contemplated such further co-operative legislation in furtherance of port purposes as was here accomplished. (Pub.Res. No. 17, 67th Cong., 1st Sess., 42 U.S. Stat. 174; Pub. Res. No. 66, 67th Cong., 2d Sess., 42 U.S. Stat. 822). Among the Articles of Agreement consented to were Articles III, VII and VI, which created the Port Authority with the powers enumerated plus 'such other and additional powers as shall be conferred upon it by the legis-

lature of either state concurred in by the legislature of the other.' Similarly, Article XI, following the agreement for an initial comprehensive plan in Article X, provides that the Port Authority should 'from time to time make plans for the development of said district, supplementary to or amendatory of any plan theretofore adopted, and when such plans are duly approved by the legislatures of the two States, they shall be binding upon both States with the same force and effect as if incorporated in this agreement.' Chapter 209 clearly falls within the congressional consent given to the articles contemplating the grant to

preme Court from that decision was dismissed in a brief *per curiam* "for want of a substantial federal question." Courtesy Sandwich Shop, Inc. v. Port of New York Authority, 375 U.S. 78, 84 S.Ct. 194, rehearing denied 375 U.S. 960, 84 S.Ct. 440 (1963). Traditionally, such a dismissal is tantamount to an affirmance of the case on the merits. *Bondholders, supra,* citing Ohio ex rel. Eaton v. Price, 360 U.S. 246, 247, 79 S.Ct. 978, 3 L.Ed.2d 1200 (1959) (separate memorandum of Brennan, J.); Wright, Federal Courts § 108, at 431 (1963).

█ It follows that, at least as to amendments which do not abrogate to the Port Authority powers and duties exceeding those contemplated by the original compact, *Courtesy Sandwich Shop* forecloses the claim that concurrent legislative amendments, not specifically consented to by the Congress, violate the compact clause. The amendment herein challenged, far from accomplishing an accretion of the powers of the Port Authority, effects a constriction or diminution of those powers previously acknowledged and exercised. Given that the purpose of the compact clause was to prohibit "the formation of any combination tending to the increase of political power in the states, which may encroach upon or interfere with the just supremacy of the United States", Virginia v. Tennessee 148 U.S. 503, 519, 13 S.Ct. 728, 734, 37 L.Ed. 537 (1893), it is arguable at best that the amendment at issue falls within the compact clause mandate. Moreover, by Section 2 of the 1921 and 1922 resolutions approving the Compact and Plan, Congress expressly reserved to itself the "right to alter, amend, or repeal this resolution", thereby retaining a veto over subsequent state enactments. 42 U.S.Stat., at 180

the Port Authority of additional powers within the framework of the compact."

and 826, *supra,* fn. 3. Thus the power to redress the imbalance of which plaintiffs complain, inheres not in the federal courts, but in the Congress itself.

For analogous reasons, I conclude that plaintiffs have failed to raise a substantial question of infringement of the commerce clause of the Constitution. Taking as true plaintiffs' allegations that the transit amendment substantially abrogated the Port Authority's power to plan for and effectuate comprehensive passenger transportation facilities in the port district, such abrogation, in my view, is not the kind of interference with interstate commerce to which the commerce clause was directed. Plaintiffs offer no authority for the proposition, implicit in their contention, that states, acting severally or cooperatively, have any affirmative constitutional duty to expedite the flow of interstate commerce.

█ The import of the commerce clause is to vest supreme regulatory authority in the Congress. Implicit in this grant is the negative power, of which the federal courts are the final arbiter, to proscribe or invalidate state action which places unreasonable obstacles in the path of interstate commerce. Implicit also is the affirmative power to enhance the flow of commerce. While this affirmative congressional power does not necessarily divest the states of such concurrent, albeit subservient, authority, a commerce clause question does not arise from a state's failure to exercise this residual authority. See Southern Pacific Co. v. Arizona, 325 U.S. 761, 766–770, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). Thus, plaintiffs' invocation of federal jurisdiction on the ground that the transit amendment violates the commerce clause must fail.

Ibid. 12 N.Y.2d at 391, 240 N.Y.S.2d at 7, 190 N.E.2d 402.

**Plaintiffs'** other theory of federal jurisdiction—that the transit amendment achieved an impermissible and irreversible conditioning of legislative sovereignty upon private consent—though ingenious, does not withstand analysis. Indeed, nowhere is it analyzed in plaintiffs' own papers. Whereas substantial impairment of the democratic process may present a justiciable due process question, the so-called "legislative divestment" does not. Compare e.g. Reitman v. Mulkey, 387 U.S. 369, 87 S. Ct. 1627, 18 L.Ed.2d 830 (1967), Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962) and its progeny. Not only is plaintiffs' contention—premature at this time—that the delegation to the bondholders is irrevocable a highly questionable one, see Home Bldg. & Loan Assn. v. Blaisdell, 290 U.S. 398, 427–439, 54 S.Ct. 231, 78 L.Ed. 413 (1934), Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, at 712, 4 L.Ed. 629 (concurring opinion of Justice Story) (1819); but, from a pragmatic point of view, the transit amendment's constraint upon non-self-supporting rail facilities does not even temporarily preclude the state legislatures from dealing with mass transit problems by other means, e.g. by enactment of subsidy programs. In these circumstances, the constitutional infringement claimed is illusory.

Since no federal constitutional claim survives and since the construction of the compact is not otherwise in question, see *Bondholders, supra,* 387 F.2d at 263 (dicta), this court has no authority to adjudicate related state-law based issues.

In view of plaintiffs' failure to state a substantial federal question, I deem it unnecessary to consider defendants' contentions respecting the absence of the requisite jurisdictional amount, the standing of plaintiffs and the advisory nature of any decision on the merits.

The motion to dismiss this action pursuant to 28 U.S.C. § 1331(a) is granted.

It is so ordered.