■ In the Matter of JAMES F. BELLMAN, Appellant, v ROBERT J. McGUIRE et al., Respondents.

Petitioner, a probationary New York City police officer, was disabled as a result of an injury which occurred on November 24, 1982, in the course of his police duties. On that date, while petitioner was investigating an automobile accident, and attempting to remove an intoxicated driver from his vehicle, the driver put his car into reverse, slamming into petitioner and pinning his legs against another car. As a result of this incident he suffered significant permanent damage to this legs.

His supervising officer reported and recommended that the accident be designated "line-of-duty", and the medical reports indicated that the injury had rendered petitioner physically incapacitated for the further performance of police duties. Accordingly, petitioner filed for accident disability retirement benefits on December 13, 1982. Five days later, the Police Department terminated petitioner's employment, and the Police Pension Fund never ruled on his disability application because he was no longer in city service.

Petitioner timely instituted an article 78 petition challenging his termination in which he asserted that the application for disability retirement benefits should have been considered and that the firing was in bad faith to frustrate his pursuit of the disability claim. The city contended that it had justifiably fired him because he lied with respect to his medical history on his application for appointment to the force, that his medical history showed a potential for future unfitness for duty and that since he was a probationary officer, he was terminable at will. In denying the petition, Special Term expressly relied on the city's reasoning.

In response to the original article 78 petition, the city vigorously argued that the petitioner had misrepresented and omitted material facts from his application for appointment. The limited and confusing nature of the record before the court at that time appeared to lend support to the city's position. A review of the complete record, however, reveals a markedly different picture.

The first fact allegedly concealed from the Police Department was a prior injury to petitioner's leg. The record reveals that on May 2, 1981, two weeks prior to the time that petitioner was scheduled to take his city Department of Personnel physical examination, he suffered a minor injury to his right knee at his then place of employment. On the recommendation of his physician, he requested a short postponement of the physical exam by reason of that injury. He did so by appearing at the Police Academy and presenting a note from his doctor to the police official in charge and was excused from the previously scheduled exam. Petitioner also communicated this circumstance to the Personnel Department in a letter dated May 29th which fully detailed all the specifics of the injury. On June 24, 1981, petitioner's doctor submitted a letter which stated that petitioner "has recovered satisfactorily and now can engage in strenuous physical activities". Subsequently, petitioner was examined by both the Police Department and by the Civil Service Commission and success-

fully passed all medical tests including orthopedic examinations.

In that factual setting, petitioner's failure to list the alleged May knee injury on his application form can hardly be construed as a "misrepresentation" and was certainly not the omission of a "material fact". Although the incident was not included in the application form, the precise information involved was provided to the Police Department. Petitioner promptly informed the Department of all relevant facts regarding this minor injury at the time it occurred, and after his recovery, he was thoroughly examined by the respondent's medical staff, which found this injury of no consequence since they approved his application.

The second alleged misrepresentation was petitioner's failure to report his hospitalization for a "parotid tumor" when he was 14 years old. Petitioner's explanation for not listing this incident on the application is that he had forgotten about it. On the original article 78 petition, the respondent Police Department submitted only the cover sheet of petitioner's hospital admission record which contained little more than a prominently featured handwritten "parotid tumor". It was argued that in failing to include this ominous sounding diagnosis in his medical history petitioner omitted a *material* medical fact from his application, which indicated that he suffered from a tumorous condition which could develop eventually into a debilitating malignancy, justifying his termination from the force.

On the instant motion to renew, petitioner has been able to obtain the balance of the medical records, relating to this more than 15-year-old incident, which reveal a completely different view of what, in reality, was an insignificant episode in his youth.

The records assembled from North Shore Hospital in Manhasset indicate that on March 1, 1972, when petitioner was 14 years old, he was admitted to that hospital because of a swelling in the parotid area. The parotid area is the area near the salivary glands on the side of the head, below and in front of the ear. *(See,* Steadman's Medical Dictionary, at 1033; Schmidt's Attorney's Dictionary of Medicine, at 52.) While the initial admitting diagnosis was "parotid tumor", the swelling receded after several hours and by the next day it had subsided completely, at which point petitioner was discharged from the hospital. The admitting treating physician at the time of the alleged tumor, Dr. Joseph Attie, confirmed his

recollection of the incident and his diagnosis that Bellman "never had any kind of parotid neoplasm, either clinically or by any type of proof * * * He had a non-specific swelling of the parotid gland but no tumor." Petitioner also submitted the reports of Dr. Merrill Goodman, an otolaryngologist, who reviewed these records and concluded, consistent with the hospital records, that petitioner did not suffer from any disease at all as a result of this incident.

While it is argued that submission of the complete 1972 hospital records is an "insufficient ground for renewal" because the records were not unavailable at the time of the original proceeding, it is significant that during the pendency of the original article 78 application petitioner never had custody of these records. Of even greater significance is the fact that respondent did have copies of the complete record but submitted *only the cover sheet* despite the fact that the petition clearly made a demand for "the complete official file containing [Bellman's] entire personnel and medical record." By submitting the cover sheet only, the respondents violated the mandate of CPLR 7804 (e) which requires the *respondent* in an article 78 proceeding to submit a complete record of all evidentiary facts. Not only did respondent violate the CPLR by failing to submit the complete record, but it compounded the error by submitting the cover page only which contained the notation "parotid tumor" in bold handwriting in the one large blank area on the page. This partial submission was misleading and communicated an unfair and inaccurate picture to the court.

In that context, and in light of the failure of the respondent to initially produce the entire medical record, the motion to renew upon petitioner's obtaining of that complete medical record should have been granted. The explanation as to why the facts were initially omitted, the difficulties and delay attendant upon petitioner's efforts to obtain the medical records, together with the manifest unfairness of the circumstances, all support the granting of renewal here in the interests of justice. *(See, Coastal Pollution Control Servs. v Poughkeepsie Hous. Auth.,* 78 AD2d 847; *Pinto v Pinto,* 120 AD2d 337; *Esa v New York Prop. Ins. Underwriting Assn.,* 89 AD2d 865, 866.)

Upon renewal, we address the merits of petitioner's claim. While petitioner, as a probationary employee, could be terminated at any time, the Police Department's power in this regard is circumscribed by the limitation that the termination of a probationary employee may not be effected with a view

toward frustrating an application for disability retirement or if it is otherwise made in bad faith. *(E.g., Edwards v Codd,* 59 AD2d 148; *Matter of Brennan v Ward,* 134 AD2d 194, 196.)

The Police Department asserts that it did not act in bad faith here because it was already considering terminating the petitioner at a time prior to his permanently disabling line-of-duty injury by reason of a preexisting knee injury. The facts are, however, that despite this alleged determination to end his employment, the respondent Police Department continued petitioner on full active duty, with all the risks and hazards incidental to that status, for a substantial period of time thereafter. Most significant is the fact that, according to the Department, it had made an internal determination in October 1982 that medical circumstances warranted petitioner's termination. Yet, on November 24, 1982, at a time well after the Police Department was supposedly concerned about his physical unfitness, and had decided to fire him by reason thereof, it sent petitioner out into the field on active police duty in the line of which he unfortunately sustained serious permanent injuries. Moreover, even after this disabling accident the Department failed to act on its alleged recommendation to dismiss probationary Officer Bellman until after petitioner submitted his application for accident disability retirement that the Police Department acted to terminate his employment. The conclusion is inescapable that his termination was effected in direct response to petitioner's filing of the disability claim and, thus, constituted a bad-faith attempt to frustrate his entitlement to disability retirement benefits.

This record clearly rebuts the various "good-faith" excuses offered by the respondent as a justification for petitioner's termination. The record amply demonstrates that he did not deceitfully withhold any material facts from the Police Department on his various applications, that he did not have significant preexisting knee injuries, of which the Department had not been informed, that he did not suffer from a malignant tumor which might blossom into a serious disabling injury and that the Police Department was not acting in good faith when it terminated petitioner's employment after he suffered permanent injuries in the line of duty. Accordingly, petitioner should be reinstated and rendered eligible to be considered for disability retirement. Concur—Kupferman, J. P., Ross, Carro, Kassal and Ellerin, JJ.