In the Matter of IRWIN COHEN, Appellant, v RICHARD KOEH-
LER, as Commissioner of the Department of Correction of
the City of New York, Respondent.

First Department, July 16, 1992

## APPEARANCES OF COUNSEL

*Paul L. Dashefsky* for appellant.

*Fred Kolikoff* of counsel *(Denise Scotto* with him on the brief; *O. Peter Sherwood, Corporation Counsel,* attorney), for respondent.

## OPINION OF THE COURT

Per Curiam.

The record in this matter is noteworthy for its omissions not its contents. At issue is whether the Department of Correction acted in good faith in terminating petitioner's status as a probationary correction captain or whether the action was taken in retaliation for the filing of an employment discrimination complaint alleging anti-Semitism against an Assistant Deputy Warden.

The essential facts are not in dispute. In July 1987, petitioner was provisionally appointed to the rank of correction captain, the appointment to become permanent upon completion of a 12-month probationary period. On September 22, 1987, petitioner received a "corrective interview", calculated to alert an employee to substandard work and the need for improvement, for failing to inspect a roll call formation. Respondent's answer contends that this incident is significant in assessing petitioner's performance and, on appeal, it is advanced as a reason for demoting petitioner to his former rank of correction officer.

On November 26, 1987, petitioner allegedly failed to inspect a condition reported to him by a correction officer comprising a breach of security and also refused to obey an order of Assistant Deputy Warden Danny Trapp directing him to move inmates from the affected area to another tier of cells. This incident resulted in the filing of a formal supervisory complaint by Trapp against petitioner on December 7, 1987. The charge of failing to investigate the breach of security was sustained in a command disciplinary hearing conducted by Warden Marron Hopkins on January 14, 1988, resulting in a recommended penalty of the loss of five vacation days. Petitioner immediately requested a further hearing, and formal charges relating to both this infraction and the alleged refusal to obey the order given by Trapp were referred to the Trial Commissioner on February 1, 1988.

On January 19, 1988, five days after the command discipli-

nary hearing, petitioner filed an employment discrimination complaint against his accuser, Assistant Deputy Warden Trapp. The complaint alleges that Trapp "has harassed him verbally and by requesting several reports from him" *[sic]* and "that he has been made the subject of disciplinary action by Assistant Deputy Warden Trapp." Respondent's answer to the petition states that petitioner was informed, on or about March 1, 1988, that the Correction Department found "no probable cause to believe that any equal employment opportunity impropriety had taken place with regard to petitioner's employment by the Department as a probationary captain." Petitioner denies ever receiving such notice, and the record contains no documentary evidence of such a finding.

In any event, three days later on March 4, 1988, a female correction officer filed a sexual harassment complaint against petitioner. A memorandum signed by Warden Marron Hopkins states that he had investigated the incident and found probable cause to believe that petitioner had made offensive statements. The matter was referred for a formal hearing by the Warden in a complaint dated March 21, 1988.

Before any of the three charges against petitioner could be resolved (failure to investigate a breach of security and to obey an order, preferred by Assistant Deputy Warden Trapp, and sexual harassment, preferred by Warden Hopkins), petitioner was informed that he was being demoted to the rank of correction officer. Respondent's brief states this took place on or about May 17, 1988. However, the record before the court on the original petition contains no documentary evidence with respect to this personnel action.

Petitioner commenced this CPLR article 78 proceeding on June 29, 1988, seeking reinstatement to the rank of correction captain with back pay. The verified complaint states that "Trapp, a Black supervisor, subjected Cohen to ridicule and repeated ethnic harassment rooted in anti-Semitic behavior." It recites petitioner's efforts to secure a transfer to another correctional facility and asserts that the Department's refusal of the transfer request was arbitrary and capricious "in light of the racial and ethnic tension existing for Cohen at his facility". It further states, "In April of 1988, approximately one month before his termination, Cohen was advised by Corrections that he had indeed received a 'satisfactory' rating on his probationary evaluation and the written evaluation evidencing the 'satisfactory' rating was displayed to Cohen." It

charges that his demotion was in retaliation for filing the employment discrimination complaint against Trapp.

In his answer, respondent Correction Commissioner asserts that the determination to terminate petitioner's probationary status was made in good faith as the result of the charges pending against him arising out of the breach of security and sexual harassment incidents. The answer specifically denies petitioner's allegation of a satisfactory performance evaluation, but no copy of such an evaluation is included with the answering papers. In his reply, petitioner remarks upon this omission, stating, "One can only wonder if this evaluation was deliberately withheld from my personnel file."

In dismissing the petition, Supreme Court relied upon *Matter of Johnson v Katz* (68 NY2d 649, 650), which states: "Judicial review of the determination to discharge [a] probationary employee is limited to an inquiry as to whether the termination was made in bad faith. Evidence in the record supporting the conclusion that performance was unsatisfactory establishes that the discharge was made in good faith". The court found "ample support" for respondent's determination in the charges pending against petitioner and held that petitioner had failed to sustain his burden of showing that it was made in bad faith.

Petitioner brought the motion for leave to renew after discovering that his personnel file now contains several documents which were not included in the administrative record submitted by the Department in response to the petition or otherwise made available to petitioner. The new evidence consists of the April 1988 evaluation which petitioner noted was conspicuously absent from the record in the original proceeding. It also includes two memoranda stating that the formal charges against petitioner were "administratively filed" in late 1988 and the cases arising out of the two incidents "closed".

The evaluation is comprised of individual performance ratings prepared by four Assistant Deputy Wardens and an overall rating signed by Warden Hopkins. Three of the Assistant Deputy Wardens found that petitioner met or exceeded performance requirements and recommended that he continue in the position of captain. The fourth, which contains less than satisfactory ratings and recommends that the period of probation be extended, identifies the person evaluated as "Cole, Kevin #121". How this evaluation found its way into petition-

er's file is not satisfactorily explained. Presumably relying on these four evaluations, Warden Hopkins determined that petitioner should not continue to perform the duties of a probationary correction captain. Oddly, the determination is dated June 27, 1988—more than one month after respondent states that petitioner was informed of his demotion—is not signed by petitioner acknowledging that he has "received a review and discussion regarding my probationary evaluation report" and, in the space designated "Date prepared", indicates only "April, 1988".

■ Supreme Court declined to grant petitioner leave to renew. In our view, the documents submitted by petitioner in support of his motion have a material bearing on the question of respondent's good faith. Respondent does not dispute petitioner's contention that these documents were only discovered by him in the months prior to bringing the motion to renew, and leave therefore should have been granted. At the very least, issues are presented as to whether termination of petitioner's probationary status was a result of his inadequate performance or a personality conflict with his supervisor, Assistant Deputy Warden Trapp (*Matter of Ramos v Department of Mental Hygiene,* 34 AD2d 925), and whether the determination was made in good faith or in retaliation for the employment discrimination complaint filed by petitioner against Trapp.

■ As noted at the outset, fundamentally at issue in this proceeding is respondent's exercise of good faith. There are significant omissions (some apparently intentional) in the administrative record submitted to Supreme Court with the answer (CPLR 7804 [e]) which do not serve to inspire confidence. Specifically, the failure to furnish petitioner and the court with complete and accurate documentation of petitioner's performance in his probationary title is misleading and constitutes bad faith as a matter of law (*Matter of Bellman v McGuire,* 140 AD2d 262, 265). This court's inquiry is therefore directed to the underlying merit of the formal charges preferred against petitioner advanced by the Department of Correction in support of its action.

■ Petitioner's contention that the administrative filing of the formal charges against him reflects their lack of substance is certainly logical. Respondent, however, maintains that the charges "were filed rather than prosecuted because petitioner's status as probationary captain had been terminated"

rendering further action "unnecessary". Thus, respondent takes the position that it was unnecessary to provide petitioner with the formalities of administrative due process on the charges against him because adverse action based upon those charges had already been taken. So stated, the fallacy of respondent's posture is readily apparent. While the Department is entitled to discontinue disciplinary action and declare the cases closed, it may not deprive respondent of the opportunity to defend himself against the charges while, at the same time, relying on the asserted infractions to establish its good faith in terminating petitioner's probationary status.

The charges arising out of the breach of security incident of November 26, 1987 brought against petitioner by Assistant Deputy Warden Trapp are particularly suspect in view of the Department's handling of the charge of employment discrimination directed at Trapp by petitioner. Respondent contends simply that petitioner has failed to sustain his burden to show that the charges—failing to inspect the breach of security and disobeying an order—were brought in bad faith. Even ignoring the ultimate disposition of the charges against petitioner, the record again fails to establish that respondent proceeded in good faith to resolve the conflicting allegations of Trapp and petitioner. Unlike the Department's handling of the sexual harassment allegation against petitioner, which resulted in a memorandum by the Warden stating the results of his investigation of the incident, no such memorandum has been submitted which discloses the results of the investigation into petitioner's charges of employment discrimination directed against Trapp—if, indeed, any investigation was conducted. While the dissent would require petitioner to present conclusive evidence of discrimination, we observe that this is not a fair burden because "discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means" *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 183).

Finally, respondent's characterization of the "corrective interview", which resulted from petitioner's failure to promptly inspect a roll call formation, as a disciplinary action is misleading and contrary to departmental policy. Institutional Order No. 3/85 states, "All Superior Officers are reminded that Corrective Interviews are a training tool used to bring substandard work to the attention of the employee. *It is not a disciplinary action* and its purpose is to improve perfor-

mance of employees to accepted standards through communication, understanding and guidance" (emphasis added).

█ The burden placed upon a petitioner who seeks reinstatement to a probationary position is substantial (*Matter of York v McGuire,* 99 AD2d 1023, *affd* 63 NY2d 760). It falls to the petitioner to present competent evidence to establish a deprivation of rights, an abuse of discretion or bad faith so as to render termination of probationary status arbitrary and capricious (*Haberman v Codd,* 48 AD2d 505, 508). Normally, the administrative agency may rebut a prima facie showing of bad faith by simply submitting records which demonstrate that performance in the probationary title was unsatisfactory (*Matter of Johnson v Katz,* 68 NY2d, at 650, *supra*). The record submitted by respondent, however, is incomplete in several material respects and contains unexplained discrepancies. It discloses that petitioner was not afforded administrative due process in defending the charges brought against him, and it reflects a selective investigation of the allegations made, variously, by and against petitioner.

In the absence of a disposition of petitioner's claim of employment discrimination, this court is unable to conclude that it is without foundation and, thus, a prima facie case of discrimination is made out (*compare, Matter of Matsa v Wallach,* 42 AD2d 1004, 1005, *affd* 34 NY2d 891). The evaluations of April 1988 (that is, those which actually rated the performance of petitioner) were unanimous in finding that he met or exceeded requirements in all areas and in recommending that he continue to act in the capacity of correction captain. The documentary evidence with respect to petitioner's performance of his duties in the probationary title does not support respondent's contention that his demotion was the result of unsatisfactory performance. Finally, while the administrative filing of charges brought against petitioner might not be dispositive as to their lack of substance, as petitioner maintains, neither is it conclusive as to the merit of those charges or the good faith of the Department of Correction in disposing of them.

In our view, the dissent overlooks the summary nature of a special proceeding (CPLR 409 [b]; *Matter of Port of N. Y. Auth. [62 Cortlandt St. Realty Co.],* 18 NY2d 250, 255). Petitioner having established a prima facie case, respondent is obliged to "submit evidentiary facts or materials, by affidavit or otherwise * * * demonstrating the existence of a triable issue of ultimate fact" (*Indig v Finkelstein,* 23 NY2d 728, 729)

or to furnish the court with an acceptable excuse for "failure to meet the strict requirement of tender in admissible form" *(Zuckerman v City of New York,* 49 NY2d 557, 562).

In a proceeding in which the good faith of respondent is in issue, the documentary evidence supplied in response to the petition is incomplete and selective, significant documents appear to have been purposely withheld from the court and petitioner, there are inconsistencies in the record (the only negative evaluation report is for an employee other than petitioner, for example), the Warden's evaluation—upon which termination of probationary status is predicated—post-dates petitioner's actual demotion by approximately five weeks, and none of the charges brought against petitioner was ever formally adjudicated. The Department of Correction, employing reasoning both specious and circular, nevertheless relies on these charges to show its good faith in demoting petitioner.

The record before us does not even demonstrate that respondent acted in good faith towards the court by fulfilling its obligation to furnish a complete record of all evidentiary facts for review (CPLR 7804 [e]; *Matter of Bellman v McGuire, supra,* 140 AD2d, at 263). Upon such a blatant exhibition of bad faith we are loath to conclude that respondent has established the existence of a triable issue of good faith.

Accordingly, the judgment of the Supreme Court, New York County (Eugene L. Nardelli, J.), entered on or about May 10, 1991, which denied petitioner's motion to renew his application (CPLR 2221, 409 [b]) pursuant to CPLR article 78 seeking to annul respondent's determination terminating his probationary status, should be reversed, on the law and the facts, the motion to renew granted and, upon renewal, the petition granted, without costs, and respondent directed to reinstate petitioner to the rank of correction captain with back pay.

MURPHY, P. J. (dissenting). Petitioner Cohen began his service as a probationary correction captain on August 12, 1987. It was with the understanding that his performance would be carefully monitored during the 12-month probationary period. It is clear from the record that the petitioner in less than a year demonstrated that the judgment of the Correction Department, in returning him to the rank of officer, was amply supported.

Given petitioner's performance and the strong basis for the many complaints and charges brought, heard and evaluated

by superior officers, it is difficult to understand how the majority have accepted as credible every statement made by petitioner Cohen. Although the majority state that some charges have not been resolved, they would not only reinstate him as a captain but would give him the salary of the captain retroactively.

The IAS court analyzed this record in finding that "petitioner has failed to carry the burden of showing that his termination was motivated by anti-Semitic prejudice rather than good faith dissatisfaction with his job performance. His allegations of anti-Semitism by a supervisor are entirely conclusory and unsubstantiated by specific incidents".

Petitioner Cohen then waited two years to renew the petition on "newly discovered evidence". The IAS court denied the application as "not timely" and a failure to show bad faith by the Department. The majority refers to the November 26, 1987 complaint. The full specifications are as follows: "On November 26, 1987, a breach of security was reported to you by Correction Officer Maria Irizarry, shield #8890, who was assigned as the 'A' Officer in eight block. You failed to investigate the breach of security. In a written report you stated that you were never notified of the breach. However, in a written report, Officer Irizarry stated that she did in fact notify you and a log book entry was made to the effect that a breach of security existed by Correction Officer Dennis White, shield #9216. You subsequently admitted to Deputy Warden Daniel P. Meehan, during your Probationary Evaluation, that you were aware of the breach of security and failed to take action."

The petitioner on January 19, 1988, filed an "employment discrimination" complaint as follows:

"Complainant alleges that since September of 1987, Assistant Deputy Warden Danny Trapp has harassed him verbally, and by requesting several reports from him.

"The complainant also alleges that he has been made the subject of disciplinary action by Assistant Deputy Warden Trapp."

The corrective action the petitioner sought to the very serious charges of discrimination was that: "Complainant requests that he be transferred, and be given an apology."

Petitioner's complaint was followed by a letter from Congressman Schumer that every consideration be given Cohen's request for transfer. It would seem that the "anti-Semitic

behavior" and "ethnic harassment" charge would have been better spelled out in this Equal Employment Opportunity Commission complaint than in the CPLR article 78 petition brought after his demotion. The majority set forth and accept the allegations in the petition that "Trapp, a Black supervisor, subjected Cohen to ridicule and repeated ethnic harassment rooted in anti-Semitic behavior" and the "racial and ethnic tension existing for Cohen at his facility." Aside from the bare allegations, the record is devoid of any factual basis for those conclusions. The majority should be curious as to the specifics, i.e., dates, times, those present, what was said, etc. That may account for the Department's action when the charges were considered, which was that there was no basis for the complaint.

The March 4, 1988 event was another grievance filed against petitioner:

"On February 11, 1988, during the noon feeding, C.O. Jeanine Portillo #9225 was working at her assigned steady post on corridor control #2. During the performance of her duties, Officer Portillo was approached by Captain Irwin Cohen #172. At this time, Captain Cohen asked C.O. Portillo 'What does a woman get out of sucking somebody off?'

"Captain Cohen has made several other statements on various other occasions, both before and after this incident. Although they were not as vulgar, they were all statements with sexual overtones.

"On March 1, 1988 at approximately 3:15 PM, Officer Portillo was working overtime on corridor control #2. Captain Sanchez #779, and Captain Cohen #172 were standing at her post talking. Captain Sanchez commented on how C.O. Quinones' #8417 stature on corridor control #1 looked very professional. Captain Cohen then stated that C.O. Quinones 'stands at attention on the rail because she came from Womens' House, and liked to take it from behind'. He then stated that 'Officer Portillo stays close to the wall because she doesn't like to take it from behind'. Captain Sanchez told Captain Cohen 'You shouldn't say things like that.'

"Officer Portillo has never answered any of these statements made by Captain Cohen. She has hesitated in reporting these statements because she is on probation, and fears that since a Captain was involved, some retaliatory measures might be taken against her."

Upon investigation a partial summary at page 47 of the record states:

"Officer Portillo, Captains Cohen and Sanchez were interviewed by the Warden, concerning the allegations. Captain Cohen denies harassing Officer Portillo in any manner.

"Captain Sanchez recalls hearing Captain Cohen make comments about Officer Portillo's 'rear end' although he doesn't recall the exact words.

"Based upon the information gathered during the investigation, it is concluded that there is probable cause to believe that Captain Cohen did make the statements, and as such, should be made the subject of formal disciplinary charges for violation of rule #3.15.250."

The charges were not prosecuted as such but were "administratively filed" when the petitioner was reduced in rank to officer and considered in that demotion from probationary status.

Renewal was properly denied since the application pursuant to CPLR 2221 was not based on newly discovered evidence which would have rendered a different result. What is referred to as newly discovered, was known to petitioner for two years and the record so indicates.

The majority find that there is no support for respondent's contention "that his [petitioner's] demotion was the result of unsatisfactory performance." Petitioner was not demoted on the basis of his over-all performance evaluations, but for specific acts of misconduct. Petitioner relies on Exhibit F to show his performance was satisfactory. However, that report has two sections and the "Employees Institutional Disciplinary/Attendance and Performance Record" is overlooked by the petitioner. The evaluation is spelled out in that during the probationary period, petitioner had been the subject of disciplinary action, had not shown improvement, and should not be continued as a probationary employee. This part was signed by the commanding officer.

The burden is on the petitioner to present legal and competent evidence of a deprivation of petitioner's rights or bad faith or other arbitrary action constituting an abuse of the Commissioner's discretion (*Haberman v Codd*, 48 AD2d 505, 508). It is very similar to *Matter of York v McGuire* (99 AD2d 1023, 1024, *affd* 63 NY2d 760), where this court wrote: "No evidence has been submitted sufficient to raise a triable issue of fact (CPLR 7804, subd [h]) to support petitioner's claim of bad faith, improper motive, arbitrariness or capriciousness. The fact that petitioner received some favorable evaluations

as well as some unfavorable ones during [his] probationary period is not sufficient to raise a triable issue of fact as to the commissioner's bad faith." Petitioner here, has not sustained the burden required and the petition was properly dismissed.

A probationary employee who fails to properly inspect roll call formation, fails to inspect a breach of security, fails to follow a direct order from his supervisor, and on two occasions, sexually harasses a female officer, cannot complain that his administrator's determination to demote him was made in bad faith.

There is no authority for this court to interfere with respondent's administrative determination and the IAS court should be affirmed.

ELLERIN, WALLACH and RUBIN, JJ., concur; MURPHY, P. J., and ASCH, J., dissent in an opinion by MURPHY, P. J.

Judgment, Supreme Court, New York county, entered on or about May 10, 1991, reversed, on the law and the facts, without costs, the motion to renew granted, and, upon renewal, the petition granted, and respondent directed to reinstate petitioner to the rank of correction captain with back pay.